# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3871

_____

John Cottrell, Derivatively and on behalf of Wal-Mart Stores, Inc.; Louisiana Municipal Police Employees' Retirement System; Elizabeth Tuberville; Kathryn Johnston Lomax; William Cottrell; Andrew Richman

*Plaintiffs - Appellants*

v.

Michael T. Duke; Aida M. Alvarez; James W. Breyer; M. Michelle Burns; James I. Cash, Jr.; Roger C. Corbett; Douglas N. Daft; Gregory B. Penner; Steven S. Reinemund; H. Lee Scott, Jr.; Arne M. Sorenson; Jim C. Walton; S. Robson Walton; Christopher J. Williams; Linda S. Wolf; Wal-Mart Stores, Inc., Nominal *Defendant*; Eduardo Castro-Wright; Thomas A. Mars; Thomas D. Hyde

*Defendants - Appellees*

Craig Herkert; Eduardo F. Solorzano Morales; Jose Luis Rodriguezmacedo Rivera

*Defendant*s

Roland Hernandez

*Defendant - Appellee*

Lee Stucky

*Defendant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Texarkana

Submitted: September 24, 2013
Filed: December 18, 2013

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

In Colorado River Water Conservation District v. United States, the United States Supreme Court held that exceptional circumstances may permit a federal court to refrain from hearing a case and instead defer to a concurrent, parallel state-court proceeding. The question in this appeal is whether a federal court may utilize Colorado River to stay a federal shareholder-derivative proceeding that contains a valid claim within the exclusive jurisdiction of the federal courts. We hold that such a case may not be stayed pursuant to Colorado River. Thus, we vacate the stay order and remand the case for further proceedings consistent with this opinion.

I.

This controversy began in 2012 with a *New York Times* investigative report. The report detailed an alleged bribery scheme involving Wal-Mart's Mexican subsidiary and Mexican government officials, suggested that Wal-Mart violated the Foreign Corrupt Practices Act, and questioned the sufficiency of Wal-Mart management's response. In the wake of this report, several shareholder-derivative lawsuits were filed across the country, including shareholder-derivative lawsuits in Delaware state court (the Delaware proceeding)[1] and in the United States District

_____

[1]Klein v. Walton, No. 7455 (Del. Ch.) (filed Apr. 25, 2012); Cohen v. Alvarez, No. 7470 (Del. Ch.) (filed Apr. 27, 2012); Gerber v. Alvarez, No. 7477 (Del. Ch.) (filed May 1, 2012); Brazin v. Walton, No. 7489 (Del. Ch.) (filed May 3, 2012); Cal.

Court for the Western District of Arkansas (the Federal proceeding).[2]  The lawsuits in the Western District of Arkansas were consolidated, and a consolidated complaint was filed by the plaintiff-shareholders (the Plaintiffs) against several Wal-Mart officers (the Defendants). See J.A. 92 (Consolidated Verified Shareholder Derivative Complaint).

The Delaware and Federal proceedings largely mirror each other.  Both proceedings focus on Wal-Mart management's alleged breach of its fiduciary duties under Delaware law. Notably, however, the Plaintiffs in the Federal proceeding bring two claims pursuant to the Securities Exchange Act of 1934 (the Securities Act claims).  Because federal courts have exclusive jurisdiction over Securities Act claims, see 15 U.S.C. § 78aa, these claims have not been pled in the Delaware

---

State Teachers' Ret. Sys. v. Alvarez, No. 7490 (Del. Ch.) (filed May 3, 2012); N.Y. City Empls.' Ret. Sys. v. Alvarez, No. 7612 (Del. Ch.) (filed June 8, 2012); Knowles v. Alvarez, No. 7630 (Del. Ch.) (filed June 18, 2012).

In September 2012, the Delaware plaintiffs consolidated their lawsuits and agreed to proceed jointly to inspect the books and records of Wal-Mart, pursuant to Del. Code Ann. tit. 8, § 220. Order Regarding Case Management at 8, In re Wal-Mart Stores, Inc.: Delaware Derivative Litig., Consolidated C.A. No. 7455-CS (Del. Ch. Sept. 5, 2012).  On October 15, 2013, the Delaware Chancery Court issued a final order in the section 220 proceeding.  The Delaware defendants appealed that order to the Delaware Supreme Court and filed a motion to stay the Delaware case pending the appeal.  The Delaware plaintiffs have agreed to file their consolidated complaint after resolution of the appeal. See Stipulation and Order Amending Order Regarding Case Management at 1-2, In re Wal-Mart Stores, Inc.: Delaware Derivative Litig., Consolidated C.A. No. 7455-CS (Del. Ch. Nov. 18, 2013).

[2]Cottrell v. Duke, No. 4:12-cv-4041-SOH; La. Mun. Police Emps.' Ret. Sys. v. Scott, No. 4:12-cv-4045-SOH; Tuberville v. Duke, 4:12-cv-4046-SOH; Lomax v. Walton, No. 4:12-cv-4047-SOH; William Cottrell v. Duke, No. 4:12-cv-4049-SOH; Richman v. Alvarez, No. 4:12-cv-4069-SOH.

proceeding. The Defendants moved to stay the Federal proceeding pending the resolution of the Delaware proceeding. The district court, in reliance on Colorado River, granted the Defendants' motion. The district court found that the Delaware proceeding would adequately protect the Plaintiffs' rights and that the proceedings' redundancy justified Colorado River abstention. In the alternative, the district court concluded that its inherent power to stay proceedings in the interest of controlling its docket was sufficient to support the stay. The Plaintiffs appeal the district court's order.

II.

This appeal raises three issues: (1) whether the district court's order is final under 28 U.S.C. § 1291; (2) whether the district court abused its discretion in utilizing the Colorado River doctrine to stay the Plaintiffs' case; and (3) if Colorado River abstention is inappropriate, whether the district court abused its discretion by relying on its inherent power to stay proceedings in the interest of controlling its docket to accomplish a result identical to that achieved through the use of Colorado River.

A.

We begin by addressing our jurisdiction to hear the Plaintiffs' appeal. See 28 U.S.C. § 1291; Kreditverein der Bank Austria Creditanstalt fur Niederösterreich und Bergenland v. Nejezchleba, 477 F.3d 942, 945 (8th Cir. 2007).[3] Typically, a stay is not a final decision for purposes of section 1291. Boushel v. Toro Co., 985 F.2d 406,

---

[3]We do not address whether the district court's stay order is subject to interlocutory review as a collateral order under Cohen because the Plaintiffs have failed to raise the argument in either of their briefs or at argument. See Ngure v. Ashcroft, 367 F.3d 975, 981 n.2 (8th Cir. 2004); accord Kmart Corp. v. Aronds, 123 F.3d 297, 299 n.4 (5th Cir. 1997) ("Kmart does not address the collateral order doctrine under Cohen, so we do not discuss the applicability of this exception." (citation omitted)).

408 (8th Cir. 1993); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 10 n.11 (1983). If, however, the stay entered is "tantamount to a dismissal and . . . effectively ends the litigation," then the order will be final and jurisdiction under section 1291 is proper. Kreditverein, 477 F.3d at 946 (quoting Boushel, 985 F.2d at 408). The Supreme Court clarified in Moses H. Cone that an order entered pursuant to Colorado River is usually appealable because the order ends litigation in the federal forum and a future state-court judgment would be res judicata. Moses H. Cone, 460 U.S. at 10. Such an order "require[s] all or an essential part of the federal suit to be litigated in a state forum." Id. at 10 n.11. More than an ordinary delay in the interest of docket management, a Colorado River order puts the plaintiff "effectively out of court." Id. When we address a stay order's finality, we are not bound by the label used by the district court to categorize its analysis. See Kreditverein, 477 F.3d at 946; Michelson v. Citicorp Nat'l Servs., Inc., 138 F.3d 508, 514, 516-17 (3d Cir. 1998). Instead, the order's finality is determined by a practical assessment of an order's effect and the "substance of what the district court intended." Kreditverein, 477 F.3d at 946; see Moses H. Cone, 460 U.S. at 10 n.11.[4]

In analyzing the finality of a stay order, we have considered: (1) whether the concurrent proceedings involve similar litigants; (2) whether the concurrent proceedings involve similar claims and issues; (3) whether the concurrent proceeding's judgment would have res judicata effect in federal court; and (4) whether the district court's order contemplated further district court involvement in the proceeding. See Kreditverein, 477 F.3d at 946; Boushel, 985 F.2d at 408-09; Lunde v. Helms, 898 F.2d 1343, 1345 (8th Cir. 1990) (per curiam).

---

[4]This effect-driven analysis leads us to reject the Defendants' contention that the district court's alternative rationale for staying the case—the district court's inherent power to control its docket—immunizes the stay order from appeal. However the district court labeled its analysis, we must analyze the practical effects of the district court's actions.

The Federal and Delaware proceedings involve substantially similar litigants. Since the shareholders in the Federal and Delaware proceedings bring their suits derivatively, Wal-Mart is the true plaintiff in interest in both proceedings. In re M&F Worldwide Corp. S'holder Litig., 799 A.2d 1164, 1174 n.31 (Del. Ch. 2002) (quoting In re MAXXAM, Inc./Federated Derivative S'holders Litig., 698 A.2d 949, 956 (Del. Ch. 1996)); accord In re Sonus Networks, Inc., S'holder Derivative Litig., 499 F.3d 47, 63-64 (1st Cir. 2007). Though, to our knowledge, no consolidated complaint in the Delaware proceeding has been filed, the Wal-Mart officers named in the separate Delaware complaints largely match those in the Federal proceeding. Cf. Clark v. Lacy, 376 F.3d 682, 686 (7th Cir. 2004) ("The addition of a party or parties to a proceeding, by itself, does not destroy the parallel nature of state and federal proceedings.").

More critically, the core claims and issues in each proceeding correspond. The Plaintiffs in the Federal proceeding assert two main claims[5]: (1) breach of various fiduciary duties under Delaware law and (2) violation of section 14(a) of the Securities Act, codified at 15 U.S.C. § 78n. See J.A. 164-66. The separate plaintiffs in the Delaware proceeding assert breach-of-fiduciary-duty claims identical to those in the Federal proceeding. Additionally, the Delaware plaintiffs allege a Delaware proxy-misrepresentation claim that shares a materiality element with section 14(a) of the Securities Act. See Rosenblatt v. Getty Oil Co., 493 A.2d 929, 944 (Del. 1985) (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)) (applying Section 14(a)'s materiality standard to Delaware proxy-misrepresentation claims). Whatever differences may exist between Federal and Delaware proxy regimes, the district court was "confident that Plaintiffs would have the opportunity to fully litigate the issues raised in their section 14(a) claim if this case were stayed in favor

---

[5]The Plaintiffs also bring a claim under Section 29(b) of the Securities Act to recover the compensation the Defendants received while violating Section 14(a) and a claim for contribution and indemnity. See J.A. 164-68.

of the Delaware action." In re Wal-Mart Stores, Inc. S'holder Derivative Litig., No. 4:12-cv-4041, 2012 WL 5935340, *4 (W.D. Ark. Nov. 27, 2012).

Next, a judgment rendered in Delaware will likely preclude subsequent litigation in the Federal proceeding. Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in Delaware is entitled to the same preclusive effect in federal court as it would receive in Delaware. Minch Family LLLP v. Buffalo-Red River Watershed Dist., 628 F.3d 960, 966 n.4 (8th Cir. 2010). Accordingly, the Delaware proceeding's preclusive effect on the Federal proceeding is largely determined by Delaware law.

Generally, under Delaware law, a judgment rendered in a shareholder-derivative lawsuit will preclude subsequent litigation by the corporation and its shareholders. See Ezzes v. Ackerman, 234 A.2d 444, 445 (Del. 1967); La. Mun. Police Emps. Ret. Sys. v. Pyott, 46 A.3d 313, 329-31 & n.11 (Del. Ch. 2012), rev'd on other grounds, 74 A.3d 612 (Del. 2013); accord Ross v. Bernhard, 396 U.S. 531, 538 (1970); Cramer v. Gen. Tel. & Elecs. Corp., 582 F.2d 259, 269 (3d Cir. 1978). Preclusion principles may also apply to other types of dismissals, for instance a shareholder's dismissal for failure to make demand on the board of directors. See Pyott v. La. Mun. Police Emps. Ret. Sys., 74 A.3d 612, 617-18 (Del. 2013); In re Career Educ. Corp. Derivative Litig., C.A. No. 1398-VCP, 2007 WL 2875203, at *10-15 (Del. Ch. Sept. 28, 2007); accord In re Sonus Networks, Inc., 499 F.3d at 64 (applying Massachusetts law and reasoning that the "policy of repose strongly militates in favor of preclusion"). But see Pyott, 46 A.3d at 328-35 (refusing to give issue-preclusive effect to a pre-suit demand dismissal but recognizing that the earlier dismissal "could operate as *stare decisis*"). Furthermore, despite Delaware's inability to adjudicate the merits of the Securities Act claims, the Delaware proceeding may still preclude litigation of the Securities Act claims in the Federal proceeding. See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 375-78, 384-87 (1996);

Brannan v. Eisenstein, 804 F.2d 1041, 1044-45 (8th Cir. 1986) ("Notwithstanding the exclusive jurisdiction of the federal courts over the claim, principles of issue preclusion . . . remain applicable."); Abbey v. Control Data Corp., 603 F.2d 724, 730-32 (8th Cir. 1979) (holding outside directors could, pursuant to the business-judgment rule, terminate a derivative action that included a Section 14(a) claim). Though one could construct a hypothetical situation where the Delaware proceeding would not preclude the entire Federal proceeding, such an outcome is unlikely and ignores the realistic risk that the Plaintiffs' lawsuit is effectively dismissed from federal court. See In re Urohealth Sys., Inc., 252 F.3d 504, 507 (1st Cir. 2001) (holding that a "probable" preclusive effect is sufficient for appellate jurisdiction over a stay order); Michelson, 138 F.3d at 515-16 (holding that "a realistic possibility" of preclusion creates appellate jurisdiction over stay order).[6]

Finally, the district court's stated objective was to surrender complete jurisdiction to the Delaware Chancery Court and allow Delaware to fully adjudicate the controversy. See Kreditverein, 477 F.3d at 946 ("[A] stay is immediately appealable if . . . the sole purpose and effect of the stay are precisely to surrender jurisdiction of a federal suit to another court." (quoting Moses H. Cone, 460 U.S. at 10 n.11 (internal quotation marks omitted) (alteration omitted))). As the court stated, "the Delaware Chancery Court can fairly and completely adjudicate all of the issues underlying Plaintiffs' claims, including their section 14(a) Exchange Act claim." In re Wal-Mart Stores, Inc. S'holder Derivative Litig., 2012 WL 5935340, *6. At oral argument before this court, the Defendants posited, despite the stay order's unequivocal language, that the Federal proceeding would recommence once the Delaware Chancery Court ruled on the threshold demand-futility issue. The district

---

[6]We pass no judgment on appellate jurisdiction in a case where an indefinite delay is not accompanied by any potential preclusive effect. Contra Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc., 490 F.3d 718, 723-24 (9th Cir. 2007) (compiling cases).

court's order contains no such limitation; it extends beyond the threshold demand determination and into the would-be substantive Delaware suit.

Two distinctions can be drawn between this case and Kreditverein, Boushel, and Lunde, Eighth Circuit cases involving stay orders that lacked finality. First, unlike the non-federal proceedings in Kreditverein, Boushel, and Lunde, the Delaware proceedings here will resolve nearly every issue and claim raised in the Federal proceeding. In Kreditverein, for instance, the foreign proceeding dealt only with a determination of damages related to one of several claims raised in the federal proceeding. 477 F.3d at 946-47; accord Boushel, 985 F.2d at 408-09. Second, unlike the district courts in Kreditverein, Boushel, and Lunde, the district court here premised its order on Delaware's ability to completely and fully adjudicate the rights of Wal-Mart's shareholders. When the district court in Boushel stayed the federal proceeding, it specifically noted in the stay order that the plaintiffs could return to federal court if they were unable to obtain full relief. 985 F.2d at 408. This "specifically left the door open for further litigation in the federal court." Id. at 410. Similar language can be found in the Kreditverein and Lunde stay orders. Kreditverein, 477 F.3d 947; Lunde, 898 F.2d at 1345.

Here, the district court stayed and administratively terminated the Federal proceedings in favor of a substantially similar state-court proceeding that will have the realistic effect of precluding any future proceedings in federal court. Accordingly, this order is final and, therefore, appealable.

B.

Having determined that we have appellate jurisdiction, we turn to the merits and begin with the propriety of Colorado River abstention in this case. A district court's decision to abstain pursuant to Colorado River is reviewed for an abuse of discretion. Fru-Con Constr. Corp. v. Controlled Air, Inc., 574 F.3d 527, 534 (8th Cir.

-9-

2009). "Federal courts, however, have a 'virtually unflagging . . . obligation to exercise the jurisdiction given them, even when there is a pending state court action involving the same subject matter.'" Id. (quoting Mountain Pure, LLC v. Turner Holdings, LLC, 439 F.3d 920, 926 (8th Cir. 2006)); see also Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18 (1976). In keeping with this obligation, we held in Fru-Con that a district court may utilize the Colorado River doctrine only "when [1] parallel state and federal actions exist and [2] exceptional circumstances warrant abstention." Fru-Con Constr. Corp., 574 F.3d at 534.[7]

The threshold question is whether the state and federal proceedings are parallel. Id. at 535.[8] In the Eighth Circuit, to be parallel, "a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." Id. When any doubt exists as to the parallel nature of concurrent state and federal proceedings, the district court cannot utilize Colorado River to refuse its jurisdiction. Id. (citing AAR Int'l, Inc. v. Nimelias Enter., S.A., 250 F.3d 510, 520 (7th Cir. 2001)). To determine whether parallel proceedings exist,

---

[7]Because we hold that the Delaware and Federal proceedings are not parallel, we do not address whether exceptional circumstances exist in this case. See Fru-Con Constr. Corp., 574 F.3d at 538; see also Mountain Pure, LLC v. Turner Holdings, LLC, 439 F.3d 920, 926 (8th Cir. 2006) (providing Colorado River's exceptional-circumstances factors).

[8]Though our finality inquiry closely follows the Colorado River parallelism inquiry, the two are slightly different in this case. When determining finality for appellate jurisdiction purposes, our focus is on the practical effect of the district court's order. See Kreditverein, 477 F.3d at 945-46. The parallelism analysis of Colorado River, on the other hand, necessarily takes into account the form of the causes of action. See Fru-Con Constr. Corp., 574 F.3d at 535-36.

we have compared the "sources of law, required evidentiary showings, measures of damages, and treatment on appeal" for each claim. Id. at 536.

Applying these standards, we determine that the Delaware and Federal proceedings are not parallel. Though most of the issues raised in the Federal proceeding are duplicated in Delaware, Delaware courts have no jurisdiction to directly address the merits of the Plaintiffs' Securities Act claims. 15 U.S.C. § 78aa ("The district courts of the United States . . . shall have exclusive jurisdiction . . . of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."). Furthermore, the Delaware proxy-misrepresentation claim will require a showing of bad faith, see Arnold v. Soc'y for Sav. Bancorp, Inc., 650 A.2d 1270, 1287-88 (Del. 1994), unlike the negligence standard that applies to the Securities Act proxy-misrepresentation claim. SEC v. Das, 723 F.3d 943, 954 (8th Cir. 2013).

Even more critical than these differences, however, is the consensus among circuits that Colorado River does not apply when an exclusively federal claim is properly before the district court. The Second, Seventh, and Ninth Circuits have held that Colorado River is not appropriate when a plaintiff raises a non-frivolous claim over which federal courts have exclusive jurisdiction. Medema v. Medema Builders, Inc., 854 F.2d 210, 213-15 (7th Cir. 1988); Andrea Theatres, Inc. v. Theatre Confections, Inc., 787 F.2d 59, 63-64 (2d Cir. 1986); Silberkleit v. Kantrowitz, 713 F.2d 433, 435-36 (9th Cir. 1983) (citing Turf Paradise, Inc. v. Arizona Downs, 670 F.2d 813, 820-21 (9th Cir. 1982)); cf. Kruse v. Snowshoe Co., 715 F.2d 120, 124 (4th Cir. 1983). The Defendants have not cited to, nor could we find, a circuit court that has held a federal court may use Colorado River to stay or dismiss a claim within the exclusive jurisdiction of the federal courts.

Generally, federal courts hold "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 359-60 (1989) (citing Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404 (1821)). In full acknowledgment of federal courts' "virtually unflagging obligation" to exercise their jurisdiction, the Supreme Court in Colorado River cleared an exception that applies in "exceptional circumstances" in "the presence of a concurrent state proceeding." Colorado River Water Conservation Dist., 424 U.S. at 813, 818. Later clarifying the scope of Colorado River, the Supreme Court noted that "it is . . . clear in this case, as it was in Colorado River, that a dismissal or stay of the federal suits would have been improper if there was no jurisdiction in the concurrent state actions to adjudicate the claims at issue in the federal suits." Arizona v. San Carlos Apache Tribe of Arizona, 463 U.S. 545, 559-60 (1983).

A strict limitation on the scope of Colorado River is consistent with the narrow nature of the doctrine and Congress's grant of exclusive federal jurisdiction. When exclusive federal jurisdiction is at play, "abstention would run counter to Congress' determination, reflected in grants of exclusive federal jurisdiction, that federal courts should be the primary fora for handling such claims." Andrea Theatres, Inc., 787 F.2d at 63. "Congress grants exclusive federal jurisdiction in order to cultivate uniformity and expertise, and sometimes to ensure the use of more liberal federal procedural protections." Medema, 854 F.2d at 213; see also Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 383 (1996). When a district court employs Colorado River in the face of exclusive federal jurisdiction, it not only abdicates its general grant of jurisdiction but also ignores Congress's desire to have federal courts adjudicate Securities Act claims. See Matsushita Elec. Indus. Co., 516 U.S. at 386 ("Congress' intent to provide an exclusive federal forum for adjudication of suits to enforce the Exchange Act is clear enough."). The prospect of increased judicial efficiency cannot justify such "perfunctory deference to Congress's intent in

committing the 1934 Act claim to exclusive federal jurisdiction." See Medema, 854 F.2d at 214-15 & n.2; see also Will v. Calvert Fire Ins. Co., 437 U.S. 655, 673 (1978) (Brennan, J., dissenting) ("[A]s evinced by the exclusive jurisdiction of the federal courts to determine 1934 Act claims, the relevant federal policy here is the precise opposite of that found to require deference to the concurrent state proceeding in Colorado River.").

The Defendants argue that the numerous decisions from the Second, Seventh, and Ninth Circuits—holding that Colorado River cannot be used when the federal proceeding contains an exclusively federal claim—do not apply here because those cases did not arise in the derivative setting and therefore did not involve a potentially dispositive threshold issue of state law.[9]  When a shareholder sues derivatively, the shareholder must satisfy the pleading requirements of Federal Rule of Civil Procedure 23.1, which incorporate a threshold issue of substantive state law, the sufficiency of demand or excuse.  See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95-97 (1991); Gomes v. Am. Century Cos., 710 F.3d 811, 815-16 (8th Cir. 2013); Shaev v. Saper, 320 F.3d 373, 377-78 (3d Cir. 2003).  Consequently, the Federal and Delaware proceedings will mirror one another through the threshold demand determination. See, e.g., In re Am. Int'l Grp., Inc. Derivative Litig., 700 F. Supp. 2d 419, 424-25, 430-31 (S.D.N.Y. 2010), aff'd, 415 F. App'x 285 (2d Cir. 2011).  The Defendants contend the Delaware Chancery Court will likely determine that demand was not

_____

[9]We reject the Defendants' contention that Fuller v. Ulland, 76 F.3d 957 (8th Cir. 1996), a case focusing on Younger abstention, provides significant guidance to our Colorado River analysis in this case.  "Because the policy underlying Colorado River abstention is judicial efficiency, this doctrine is substantially narrower than are the doctrines of Pullman, Younger and Burford abstention, which are based on 'weightier' constitutional concerns."  Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coop., Inc., 48 F.3d 294, 298 n.4 (8th Cir. 1995) (quoting Colorado River Water Conservation Dist., 424 U.S. at 817-18).

excused, and, if that determination is made, such a finding would likely end the litigation in the Federal proceeding. Thus, because the Delaware Chancery Court, applying the same state-law-based standard that would have been applied in the Federal proceeding, could fully dispose of the Federal proceeding, the two proceedings are parallel. See Fru-Con Constr. Corp., 574 F.3d at 535 (reasoning that proceedings are parallel "when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court").

The Defendants' argument is persuasive, especially given the two-fold nature of shareholder-derivative litigation, a suit by the shareholders compelling the corporation to act and a suit by the corporation against those liable to it. See Ross v. Bernhard, 396 U.S. 531, 534-35 & n.4 (1970); Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244, 253-54 (Del. 2000); see also Potter v. Hughes, 546 F.3d 1051, 1055-56 (9th Cir. 2008) (analyzing Federal Rule of Civil Procedure 23.1 as a "logical antecedent" to whether the court had subject matter jurisdiction over the case). Nevertheless, we reject the Defendants' argument because it ignores the formal differences between the two proceedings after the threshold demand determination.

We cannot simply assume that Delaware's demand requirements will dispose of this controversy. See Shields v. Murdoch, 891 F. Supp. 2d 567, 579 (S.D.N.Y. 2012). The Defendants may be correct; the initial demand inquiry may dispose of both proceedings. The Delaware Chancery Court may, however, excuse pre-suit demand and allow the Delaware proceeding to continue. If the Delaware action proceeds, it will not directly adjudicate the Wal-Mart shareholders' potential Securities Act claims. The resulting divergence of the Federal and Delaware proceedings, and the practical elimination of the Securities Act claims, casts doubt on the parallel nature of the two proceedings. See Fru-Con Constr. Corp., 574 F.3d

-14-

at 535 ("[J]urisdiction must be exercised if there is any doubt as to the parallel nature of the state and federal proceedings.").

The Defendants counter that the two proceedings remain parallel despite the Securities Act claims' elimination because the shareholders in the Delaware proceeding would be able to litigate a similar Delaware-based proxy-misrepresentation claim. We disagree. Notwithstanding the similarities between Federal and Delaware claims in this case, granting a district court the discretion to pretermit Securities Act claims, in favor of a state proceeding that lacks jurisdiction to hear them, demotes the Securities Act claims to a secondary status and deprives plaintiffs of a forum to assert a remedy chosen by Congress. See Levy v. Lewis, 635 F.2d 960, 967 (2d Cir. 1980) ("[F]ederal courts must hear claims within their exclusive jurisdiction, for otherwise the right alleged would never be fully adjudicated."). "Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions" and still, deliberately decided to vest federal courts with exclusive jurisdiction to adjudicate Securities Act claims, claims that frequently arise in the derivative setting. See Matsushita Elec. Indus. Co., 516 U.S. at 383; Shaev, 320 F.3d at 378-79 (citing J.I. Case Co. v. Borak, 377 U.S. 426, 431-32 (1964)). As the Second, Seventh, and Ninth Circuits have held, when a party raises an exclusively federal claim, Colorado River is inappropriate, and the derivative nature of the proceedings does not alter this conclusion.

We share the district court's legitimate concern that shareholders may utilize Securities Act claims to gain a tactical advantage, secure a separate federal forum, and avoid consolidation with state actions. The district court discussed the Federal proceeding's potential vexatious nature as an exceptional-circumstance factor weighing in favor of abstention. Since we hold the Federal and Delaware proceedings are not parallel, we need not weigh the exceptional-circumstances

-15-

factors. Nonetheless, we note that other circuits have declined to adopt a categorical rule barring <u>Colorado River</u> when an exclusively federal claim is raised in the federal proceeding, for instance <u>Colorado River</u> may still remain appropriate if the claim is frivolous. <u>See</u> <u>Medema</u>, 854 F.2d at 215. We need not consider the wisdom of these exceptions here, however, because the district court did not consider them in the first instance.

In conclusion, we join the Second, Seventh, and Ninth Circuits and hold that the <u>Colorado River</u> doctrine may not be used to stay or dismiss a federal proceeding in favor of a concurrent state proceeding when the federal proceeding contains a claim over which Federal courts have exclusive jurisdiction.

C.

The district court provided an alternative basis for imposing the stay, a district court's inherent power to stay proceedings in the interest of controlling its docket. We review a district court's decision to stay a case on this basis for abuse of discretion. <u>See</u> <u>Lunde</u>, 898 F.2d at 1345.

We begin with the often quoted phrase relied upon by the district court, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254 (1936); <u>see also</u> <u>Kreditverein</u>, 477 F.3d at 945-46. We have often recognized a district court's inherent power to manage and control its docket. <u>See, e.g.</u>, <u>Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.</u>, 259 F.3d 949, 952-54 (8th Cir. 2001); <u>Lunde</u>, 898 F.2d at 1345. In <u>Kreditverein</u>, the court noted that these inherent powers coexist with the <u>Colorado River</u> doctrine and the line dividing the two powers is not immediately clear. <u>See</u> 477 F.3d at 945-46. Though these powers coexist, they are

-16-

different and cannot be used, as they were here, as alternative methods for accomplishing an identical result.

A year before the Supreme Court's ruling in Colorado River, we recognized a split among the circuits regarding a district court's power to "stay proceedings in an action pending the outcome of a similar or identical state court action filed before the federal action." Applegate v. Devitt, 509 F.2d 106, 108-09 (8th Cir. 1975) (per curiam); see also Augustin v. Mughal, 521 F.2d 1215, 1216-17 (8th Cir. 1975) (per curiam). We noted that some circuits, relying on a court's inherent power to control its docket, as recognized in Landis, had held that a district court may, in its broad discretion, stay a federal proceeding in favor of a concurrent state proceeding; others had held the opposite. See Applegate, 509 F.2d at 108-09; see also 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4247, at 443-48 & nn.18-21 (3d ed. 2013). In this context, a year after Applegate, the Supreme Court issued Colorado River and resolved the dispute. Absent "weightier considerations of constitutional adjudication and state-federal relations," only exceptional circumstances permit a federal court to refuse to exercise its jurisdiction in deference to a concurrent state proceeding. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18 (1976); see also Missouri ex rel. Nixon, 259 F.3d at 953.

Post Colorado River, our precedent has recognized that a district court retains its inherent power to control its docket when facing concurrent state and federal litigation. See Lunde, 898 F.2d at 1345 ("[W]e hold the district court did not clearly abuse its discretion in staying the federal case pending resolution of the on-going state proceedings. In our view, this is a matter of docket management."). This power, however, is not limitless. Colorado River, reaffirmed by Moses H. Cone, sets forth the proper test for a district court to apply when the district court's order, in the

context of concurrent state and federal duplicative litigation, absent the application of other abstention doctrines, amounts to a complete refusal to exercise jurisdiction.[10] To permit a district court to rely solely on its inherent power to control its docket, when the effect of the district court's order is to accomplish the same result contemplated by Colorado River, would allow a court to bypass the rigorous test set out by the Supreme Court. See Evans Transp. Co. v. Scullin Steel Co., 693 F.2d 715, 716-17 (7th Cir. 1982); cf. Kanciper v. Suffolk Cnty. Soc'y for the Prevention of Cruelty to Animals, Inc., 722 F.3d 88, 92-93 (2d Cir. 2013). Here, the district court abused its discretion by using its inherent power to control its docket as an alternative justification for the stay, a stay which effectively dismissed the federal proceeding in favor of a concurrent state dispute. The proper standard to apply, given the effect of the stay, was Colorado River.

On remand, the district court may impose a more finite and less comprehensive stay, if it concludes that such a stay properly balances the rights of the parties and

---

[10]The Court in Moses H. Cone clarified that district courts retain discretion but must apply the proper standard:

> Under . . . Colorado River, of course, the decision whether to defer to the state courts is necessarily left to the discretion of the district court in the first instance. Yet to say that the district court has discretion is not to say that its decision is unreviewable; *such discretion must be exercised under the relevant standard prescribed by this Court. In this case, the relevant standard is Colorado River's exceptional-circumstances test, as elucidated by the factors discussed in that case.* As we shall now explain, we agree with the Court of Appeals that the District Court in this case abused its discretion in granting the stay.

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 18-19 (1983) (emphasis added).

serves the interests of judicial economy.  <u>See</u> <u>Lunde</u>, 898 F.2d at 1345.  We leave the determination of that question to the district court's discretion.

## III.

Accordingly, we vacate the district court's order and remand for further proceedings consistent with this opinion.

_____