# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1108
_____

Window World International, LLC; Window World, Inc.

*Plaintiffs - Appellants*

v.

Jill O'Toole; James T. Lomax; Window World of St. Louis, Inc.; Window World of Springfield-Peoria, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 22, 2021
Filed: January 7, 2022

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

This is an appeal of a district court order staying a federal action for trademark infringement and unfair competition pending resolution of common trademark license issues in long-pending state court litigation between the parties. We dismiss the appeal for lack of jurisdiction under 28 U.S.C. § 1291.

# I. Background

Window World International, a Delaware limited liability company, owns registered trademarks for the marketing of exterior remodeling products such as custom-made vinyl windows (the "WW Trademarks"). Window World, Inc., a North Carolina corporation, is the exclusive licensee of the WW Trademarks. We will refer to these parties collectively as "Window World." Window World distributes products through some two hundred independently owned and operated franchisees, including Window World of St. Louis, Inc., and Window World of Springfield-Peoria, Inc., companies co-owned by James T. Lomax III (collectively, "the Lomax Parties"). Window World sublicenses its franchisees to use the WW Trademarks.

In January 2015, the Lomax Parties and other Window World franchisees sued Window World in the North Carolina Business Court to "redress the long history" of "actionable conduct as franchisors" (the "N.C. Litigation"). The N.C. plaintiffs allege that their licensing agreements are in fact franchise agreements, and that Window World has failed to make franchise disclosures required by federal and state law. They assert claims of fraud and breach of contract, seeking to have the agreements declared null and void and reformed pursuant to the parties' oral relationships and long-standing course of dealing. In counterclaims, Window World asserts the right to terminate the Lomax Parties' licenses. The protracted N.C. Litigation remains ongoing. The 112-page Third Amended Complaint asserts thirteen causes of action.

In April 2019, the Lomax Parties sent to an unknown number of Window World customers a letter signed by Jill O'Toole, an employee of the Lomax Parties. Window World alleges that the letter included a protected trademark -- "Window World's stylized image of a double hung window" -- wrongfully solicited prospective customers without disclosing it was sent by the Lomax Parties, and made material misrepresentations about Window World's product warranty by warning recipients, "If you want to retain the warranty on your products, you need to call us by April 12,

2019," when in fact Window World warrants its products for as long as the original purchaser/property owner resides in the home where the windows are installed. Window World then commenced this action in the Eastern District of Missouri, asserting four causes of action under the federal Lanham Act -- false advertising, trademark infringement, unfair competition, and dilution of a famous mark. See 15 U.S.C. §§ 1114, 1125.

The Lomax Parties moved to dismiss for failure to state a claim, see Fed. R. Civ. P. 12(b)(6), or, in the alternative, to dismiss or stay the federal case pursuant to the Supreme Court's decision in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). The district court dismissed the false-advertising and trademark-dilution claims and all claims against O'Toole personally for failure to state a claim. The court ruled that Window World's complaint stated plausible trademark-infringement and unfair-competition claims under the Lanham Act and Missouri law and denied the motion to dismiss those claims. But it granted "Defendants' Motion for Colorado River Abstention" and stayed the federal action "pending determination of the scope of Defendants' license to use Plaintiffs' protected marks in [the N.C. Litigation]." Window World Int'l et al. v. O'Toole et al., No. 4:19-cv-2363 Mem. & Order (E.D. Mo. Nov. 30, 2020).

Window World appeals, arguing the district court erred in granting a stay under controlling Colorado River precedents. "As always, we must [first] determine whether we have jurisdiction over [Window World's] appeal." Kreditverein der Bank Austria Creditanstalt fur Niederösterreich und Bergenland v. Nejezchleba, 477 F.3d 942, 945 (8th Cir. 2007). Concluding that the stay order at issue is neither a final order under 28 U.S.C. § 1291 nor a collateral interlocutory order that may be appealed, we dismiss the appeal for lack of jurisdiction.

## II. Discussion

The courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291. The purpose of this finality rule "is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). "A final judgment is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Borntrager v. Cent. States, S.E. & S.W. Areas Pension Fund, 425 F.3d 1087, 1091 (8th Cir. 2005) (quotation omitted).

In Colorado River, the Supreme Court reviewed a final district court order dismissing water rights claims by the United States under federal law; the district court dismissed the federal action because "the doctrine of abstention required" deference to pending proceedings under state law. 424 U.S. at 806. The United States appealed. As the dismissal was a final order, appellate jurisdiction under § 1291 was not at issue. In affirming the dismissal, the Supreme Court noted that "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Id. at 817 (cleaned up). And because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," the Court held that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." Id. at 817-18.

Here, the district court invoked Colorado River's "wise-judicial-administration" principle but granted a stay of the federal action, rather than a final order of dismissal. Immediate appeal of a stay order raises the question of appellate

-4-

jurisdiction under § 1291, an initial issue we must address even if the parties on appeal do not. The general principles applicable to this issue are well-established. "An order staying civil proceedings is interlocutory and not ordinarily a final decision for purposes of 28 U.S.C. § 1291." Lunde v. Helms, 898 F.2d 1343, 1345 (8th Cir.), cert. denied, 498 U.S. 897 (1990). "If, however, the stay entered is tantamount to a dismissal and effectively ends the litigation, then the order will be final and jurisdiction under section 1291 is proper." Cottrell v. Duke, 737 F.3d 1238, 1241 (8th Cir. 2013) (cleaned up); see Kreditverein, 477 F.3d at 946; Boushel v. Toro Co., 985 F.2d 406, 408 (8th Cir. 1993). In making this determination:

> we are not bound by the label used by the district court to categorize its analysis. Instead, the order's finality is determined by a practical assessment of an order's effect and the substance of what the district court intended.

Cottrell, 737 F.3d at 1242 (cleaned up).

The Supreme Court examined the distinction between appealable and non-appealable stay orders in Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983). The Court explained that a stay of a federal action is not a final order merely because it allows a state court to be the first to rule on a nonessential issue the state and federal proceedings have in common. Id. at 10 n.11. However, where the effect of a stay is to leave the appellant "effectively out of court" -- such as the order at issue in Moses H. Cone staying a federal action to compel arbitration pending resolution of a parallel state court suit -- the stay order is appealable under § 1291 if it "amounts to a dismissal of the [federal] suit." Id. at 10. This occurs if the preclusive effect of the resolution of the state suit will "mean[] there would be no further litigation in the federal forum." Id. In addition, the Court held, the order at issue was appealable under the collateral order exception to the finality rule because "[a]n order that amounts to a refusal to adjudicate the merits plainly presents an

important issue . . . . [that would] be entirely unreviewable if not appealed now." Id. at 12. The Court emphasized that its ruling was narrow: "We hold only that a stay order is final when the sole purpose and effect of the stay are precisely to surrender jurisdiction of a federal suit to a state court." Id. at 10 n.11. Turning to the merits, the Court applied "the Colorado River factors" and affirmed the court of appeals' decision to vacate the stay. Id. at 19-29.

As Moses H. Cone made clear, there must be pending parallel state and federal court proceedings before the Colorado River doctrine is implicated. As we explained in Fru-Con Construction Corp. v. Controlled Air, Inc.:

> The pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties is not alone sufficient. Rather, *a substantial similarity must exist* between the state and federal proceedings, *which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court.* This analysis focuses on matters as they currently exist, not as they could be modified.

574 F.3d 527, 535 (8th Cir. 2009) (emphasis added) (citations omitted) (lead opinion of Beam, J., joined by the other members of the panel on this point, see id. at 541 & n.10 (Shepherd, J., dissenting)); accord Michelson v. Citicorp Nat'l Servs., Inc., 138 F.3d 508, 515 (3d Cir. 1998). Absent this substantial likelihood, the doctrine often mistakenly referred to as "Colorado River abstention" simply does not apply. As the Supreme Court noted in Moses H. Cone, 460 U.S. at 28:

> When a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.

-6-

In this case, the Lomax Parties based their motion to dismiss or stay exclusively on the Colorado River doctrine. But neither the motion nor their Memorandum in Support made any claim that the pending N.C. Litigation will likely resolve the plausible claims of trademark infringement and unfair competition asserted by Window World in this action. Indeed, the Lomax Parties made no reference to this *indispensable* prerequisite to Colorado River relief. Nor is there anything in the record suggesting that the N.C. Litigation is likely to resolve or even address Window World's allegations of willful infringement of the WW Trademarks, false misrepresentation of product warranties, and wrongful solicitation of Window World customers by failing to disclose the source of the 2019 Letter. Indeed, the record reflects that no claims based on the 2019 Letter were raised in the N.C. Litigation before the stay order was entered.

Despite the lack of evidence that the N.C. Litigation was likely to resolve the issues raised by Window World in this action, the district court purported to grant "Defendants' Motion for Colorado River Abstention" and stayed the federal action "pending determination of the scope of Defendants' license to use Plaintiffs' protected marks" in the N.C. Litigation. But the court's characterization of its action does not control the issue of appellate jurisdiction. "Instead, the order's finality is determined by a practical assessment of an order's effect and the substance of what the district court intended." Cottrell, 737 F.3d at 1242; see Michelson, 138 F.3d at 516-17. Rather than an order that left Window World "effectively out of [federal] court," the stay order expressly contemplates further proceedings in federal court.

It is apparent that the district court's intent was *not* to "surrender jurisdiction of a federal suit to a state court." Moses H. Cone, 460 U.S. at 10 n.11. Rather, the court perceived that the scope of the license agreements between the Lomax Parties and Window World at issue in the N.C. Litigation was highly relevant to Window World's trademark infringement and unfair competition claims in the federal action. This is clearly true. "By definition, a party who holds a valid license to use a

trademark and is not in breach of the license cannot be an infringer of the licensed mark. . . . Conversely, a use by a licensee which is outside the scope of the license is both trademark infringement and a breach of contract."  4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 25:30 (5th ed. 2021).  Likewise, the claims of unfair competition will likely turn on "the scope of [the Lomax Parties'] license to use [Window World's] protected marks."

In granting a stay, the district court ordered that "any party may move to lift the stay after the North Carolina state court determines the scope of [the Lomax Parties'] license to use [Window World's] marks."  The court anticipates further involvement in the federal case but concluded that the risk of piecemeal litigation and principles of comity and judicial economy warranted staying the resolution of Window World's Lanham Act claims "only until the central *state* issue -- the scope of the trademark license -- is decided in the North Carolina suit."  This was a "wise-judicial-administration" ruling, the origin of the Colorado River doctrine.  See 424 U.S. at 817-18.  This ruling may or may not have been an abuse of the court's discretion.  But that issue can be taken up on appeal from any final order the court ultimately enters.  A stay does not become a final order "merely because it may have the practical effect of allowing a state court to be the first to rule on a common issue."  Moses H. Cone, 460 U.S. at 10 n.11.  Consistent with the district court's intent as reflected in its order, we conclude that the stay is not appealable as a final order or under the narrow collateral-order exception to finality.  See Kreditverein, 477 F.3d at 945-48; Boushel, 985 F.2d at 408-10; Lunde, 898 F.2d at 1345; accord Michelson, 138 F.3d at 514-18.

We dismiss the appeal for lack of jurisdiction.

COLLOTON, Circuit Judge, dissenting.

The district court granted a motion filed by the defendants, the "Lomax Parties," to dismiss or stay this action, under the doctrine of *Colorado River Water*

*Conservation District v. United States*, 424 U.S. 800 (1976), pending the disposition of litigation between the same parties in North Carolina state court. The plaintiffs, Window World International and Window World, Inc., appeal the order and assert that the district court abused its discretion by granting the stay. The Lomax Parties do not dispute that this court has jurisdiction over the appeal, and I conclude that the appeal is proper. Reviewing the district court's exercise of discretion, I would affirm the order.

The district court recognized that a stay under *Colorado River* is appropriate only when state and federal proceedings are "parallel" and "exceptional circumstances" justify declining to proceed with the federal case. The court determined that the state and federal cases between these parties are parallel: If the Lomax Parties succeed in the North Carolina litigation and obtain a ruling that they have unlimited rights to use Window World's trademarks, then Window World's claims in federal court alleging unauthorized use of or encroachment on protected marks would necessarily fail. After weighing several factors cited in *Colorado River*, the court determined that exceptional circumstances warranted a stay until the North Carolina state court determines the scope of the Lomax Parties' license to use Window World's marks.

This court has said that "an order entered pursuant to *Colorado River* is usually appealable because the order ends litigation in the federal forum and a future state-court judgment would be res judicata." *Cottrell v. Duke*, 737 F.3d 1238, 1242 (8th Cir. 2013). In this case, the Lomax Parties claim in the North Carolina litigation that they have "rights to use Window World trademarks" and "to be free from intrusion by [Window World] into their business affairs." R. Doc. 15-1, at 100. They assert rights to use the trademarks according to "the parties' course of dealings," during which Window World allegedly "made little or no effort to police its marks." *Id.*; R. Doc. 35-1, at 94. If the Lomax Parties prevail in the North Carolina litigation and obtain a declaration of unlimited rights to use the Window World trademarks, then a state-court judgment to that effect would foreclose all of Window World's claims

in this case. Whether the Lomax Parties have such rights is thus an "essential" part of the federal action that will be litigated in a state forum. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n.11 (1983). The state court's ruling on the point would be *res judicata* in the federal case, so the issue could not be taken up on appeal from a later final judgment entered by the district court. Under those circumstances, I believe the parties are correct that the district court's order is appealable under 28 U.S.C. § 1291. *See Cottrell*, 737 F.3d at 1241-43; *Kreditberein der Bank Austria v. Nejezchleba*, 477 F.3d 942, 946 (8th Cir. 2007).

On the question whether the district court abused its discretion in staying the federal action, we first consider whether the state and federal proceedings are "parallel." This criterion is satisfied when there is "a substantial likelihood that the state proceedings will fully dispose of the claims presented in the federal court." *Cottrell*, 737 F.3d at 1245 (quoting *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 535 (8th Cir. 2009) (opinion of Beam, J.)). Here, the district court reasoned that the actions are parallel because if the Lomax Parties prevail in North Carolina, then Window World's claims in federal court would necessarily fail. Window World argues that the district court misread the state-court complaint, and that certain references to claims made by the Lomax Parties "without limitation" did not mean that they claimed an unlimited right to use the Window World trademarks. But as noted, the complaint does assert "rights to use Window World trademarks" consistent with a course of dealing in which Window World "made little or no effort to police its marks." And the complaint alleges a right to conduct business "free from intrusion" by Window World, where a principal means of "intrusion" is an assertion that the Lomax Parties are constrained in how they may use the Window World marks. The district court did not abuse its discretion in concluding that if the Lomax Parties prevail on their broad allegations in state court, then the state proceedings will fully dispose of the claims in federal court.

Unlike some *Colorado River* cases, the claims in North Carolina state court do not mirror precisely the claims in federal court, so it is not certain that the state

proceedings will entirely resolve the federal case. If the state court does not award the Lomax Parties all of the relief sought, then it is possible that the federal case will require further proceedings. A federal court applying *Colorado River*, however, looks "not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Day v. Union Mines, Inc.*, 862 F.2d 652, 656 (7th Cir. 1988) (internal quotation omitted). That standard is satisfied on this record. Here too, the scope of the Lomax Parties' rights to use the Window World trademarks is at issue in both federal and state court, the state litigation was commenced first and has progressed further, and the maintenance of separate actions is likely to result in piecemeal adjudication. These additional factors, together with the parallel nature of the proceedings, make the situation exceptional enough to justify the district court's entry of a stay despite the ordinary strong preference for the exercise of federal jurisdiction. *See Colorado River*, 424 U.S. at 818-19.

For these reasons, I would affirm the order of November 30, 2020.

_____