# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1389
_____

CEZ Prior, LLC, a Minnesota limited liability company

*Plaintiff - Appellant*

v.

755 N Prior Ave. LLC, a Minnesota limited liability company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 24, 2024
Filed: January 24, 2025
_____

Before GRUENDER, BENTON, and KOBES, Circuit Judges.
_____

GRUENDER, Circuit Judge.

CEZ Prior, LLC ("CEZ") challenges the district court's[1] denial of a preliminary injunction to enjoin a purchase agreement for real property that CEZ entered into with 755 N Prior Ave., LLC ("Prior"). We affirm.

---

[1]The Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota.

# I. Background

In December 2022, CEZ entered into a purchase agreement with Prior to purchase a tract of real property—a large building occupied by numerous commercial tenants and located at 755 North Prior Avenue, St. Paul, Minnesota—for $26 million. The purchase agreement required Prior to "reasonably cooperate" with CEZ to obtain tenant estoppel certificates. A tenant estoppel certificate is a signed writing by a tenant, certifying that "certain facts are correct, such as that a lease exists, that there are no defaults, and that rent is paid to a certain date." *Estoppel Certificate*, Black's Law Dictionary (12th ed. 2024). The parties also agreed that if CEZ failed to tender cash at closing, Prior could terminate the purchase agreement.

After signing the purchase agreement, the parties discovered errors in the tenants' units' square footage measurements. These measurements were used to assess and collect common area maintenance charges for costs like operating expenses, taxes, and insurance premiums. Because of these errors, some tenants were behind on rent, and some tenants' rates would increase. In July 2023, the parties agreed to amend their purchase agreement, reducing the purchase price from $26 million to $15.1 million and reducing the cash required at closing from $7.5 million to $3.8 million. The closing date was set for October 30, 2023.

In September 2023, CEZ emailed Prior, asking to delay closing and to "shift tactics." It cited its "existing financial situation," including a "high insurance quote, the deteriorating [common area maintenance charge] collection and near zero July 31 [net operating income]." It also mentioned "the loss of a key philanthropic funder." CEZ requested to delay closing until February or March 2024 and suggested that it could assume responsibility for gathering the estoppel certificates. CEZ asserted that the current tenants needed to be informed that their rates would be increasing under new ownership. Prior did not agree to CEZ's requests. It asserted that, under the July 2023 revisions and price cut, CEZ had already assumed responsibility for any rent deficits caused by the common area maintenance charges.

Instead, Prior sent CEZ proposed estoppel certificates that did not address the rate increases.

About a week later, CEZ sent Prior edited estoppel certificates that corrected the square footage calculations and the tenants' adjusted rates. CEZ noted that "these changes may necessitate a difficult discussion with the tenant being asked to sign," but that, for CEZ to have confidence in the leases, it would be "critical" to ask "tenants to acknowledge any past errors made by the landlord's property managers." Prior responded that it disagreed with the edits and asked CEZ how it wished to proceed. Prior did not explain its reasons at the time but later argued that CEZ's proposed changes would have required Prior to renegotiate the terms of nearly fifty tenant leases. It also suspected CEZ lacked the cash to close and had raised the estoppel certificate issue as a delay tactic. This email exchange occurred a little over two weeks before the planned October 30 closing date. On October 30, CEZ demanded that Prior provide satisfactory tenant estoppel certificates. Two days later, Prior notified CEZ of its intent to terminate the agreement, alleging that CEZ had breached by failing to tender cash at closing.

On November 27, CEZ sued Prior in Minnesota state court for breach of contract. On December 15, CEZ filed a motion to enjoin the termination of the purchase agreement. Prior removed the case to federal court under diversity jurisdiction, opposed CEZ's motion, and counterclaimed for breach of contract. The next day, CEZ motioned to remand the matter to state court, or in the alternative, for injunctive relief to enjoin the termination of the purchase agreement. On December 29, the district court stayed the matter until January 31 and scheduled a motions hearing for January 25. Its order stated: "During the stay, the parties' rights, claims, and defenses are preserved including those arising under law or the parties' written purchase agreement." At the January 25 hearing, CEZ withdrew its motion for a remand, leaving only its motion for a temporary injunction. On January 29, the district court denied CEZ's motion for a preliminary injunction.

## II. Discussion

On appeal, CEZ argues that the district court erred by denying a preliminary injunction. CEZ also argues that the district court erred under Minnesota law when it did not grant CEZ an additional fifteen days to close under § 559.211 or, alternatively, two days to close under § 559.21. We have jurisdiction under 28 U.S.C. § 1292(a)(1) to review an interlocutory order denying a preliminary injunction.

### A. Preliminary Injunction

"We review the denial of a preliminary injunction for abuse of discretion." *D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 999 (8th Cir. 2019) (internal quotation marks omitted). We review factual findings for clear error and legal conclusions *de novo*. *Id.* "A district court abuses its discretion when it rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions." *Id.* (internal quotation marks omitted). We will not reverse this discretionary decision if it "remains within the range of choice available to the district court, accounts for all relevant factors, does not rely on any irrelevant factors, and does not constitute a clear error of judgment." *Id.* When deciding whether to grant a preliminary injunction, a district court considers four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

Here, the district court found that the first factor, threat of irreparable harm, favored CEZ, but it declined to grant a preliminary injunction because the other three factors favored Prior. Prior does not contest that CEZ faced a threat of irreparable harm, so we do not address it here.

We first address the probability of success on the merits, the "most significant" factor. *See Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022). To succeed, CEZ must demonstrate "a reasonable probability of success, that is, a fair chance of prevailing" on the merits of its claims. *See Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (internal quotation marks omitted).

The district court found that CEZ was unlikely to succeed on the merits because CEZ provided insufficient evidence to demonstrate that Prior had not reasonably cooperated in obtaining tenant estoppel certificates. The purchase agreement required Prior to "reasonably cooperate" in obtaining "certificates that [were] reasonably satisfactory" to CEZ. CEZ's only proffered evidence of noncooperation was a single email exchange. This email exchange concluded with Prior saying: "Please confer with your client and advise as to how they wish to proceed."

The district court did not clearly err in finding that the email exchange "demonstrate[d Prior's] desire to cooperate." CEZ argues that Prior's email requesting corrections "was not an invitation to cooperate" but "was a direction for CEZ to consider its options," because Prior "would not agree to estoppel certificates that CEZ deemed satisfactory." This argument fails. CEZ's only evidence—an email exchange where Prior rejected CEZ's edits without explaining its concerns—does not demonstrate a lack of reasonable cooperation. Further, all proffered evidence points towards timely and responsive communications from Prior. Prior was prepared to gather its proposed estoppel certificates, but CEZ rejected those estoppel certificates and insisted that Prior either: (1) extend the closing date so that CEZ could gather certificates with its edits included—edits that, it acknowledged, would "necessitate a difficult conversation with the tenants"—or (2) waive the estoppel certificate requirement in exchange for Prior altering the payment arrangement. As the district court put it, "[i]f anything" this email exchange demonstrates Prior's "desire to cooperate with CEZ on the tenant estoppel certificates." Therefore, we perceive no error in the district court's finding that CEZ

failed to demonstrate a reasonable probability of success on the merits of its breach of contract claim.

We next address whether the district court was correct to find that the balance of harms did not weigh in CEZ's favor. "[A] court should flexibly weigh the case's particular circumstances to determine whether . . . justice requires the court to intervene to preserve the status quo." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998). The district court found that the balance of harms "slightly" favored Prior. On one side, it weighed Prior's interest in exercising its rights as owner of the property, including arguments that the ownership dispute could harm its business and ability to attract tenants. On the other, it weighed CEZ's interest in purchasing the property, including questions about whether CEZ could purchase the property at all. It concluded that, considering the lack of evidence of CEZ's ability to pay, "it [was] hard to conclude that the balance of harms weigh[ed] in favor of CEZ."

We agree with the district court. CEZ presented only indirect evidence of its financial ability to close. Further, if CEZ had wished to present financial evidence, it could have at the motions hearing. Any deficiency in the record could hardly be considered accidental. Thus, the district court did not err in finding that the balance of harms favored Prior.

Finally, we address whether the public interest factor weighed in favor of CEZ. The public has an interest in enforcing valid contracts. *See Sleep No.*, 33 F.4th at 1019. Because CEZ failed to demonstrate a probability of success on the merits of its breach of contract claim, we perceive no abuse of discretion in the district court's weighing of the public interest factor.

Altogether, even assuming the threat of irreparable harm favored CEZ, the district court reasonably found that the balance of the factors favored Prior. Therefore, the district court did not abuse its discretion by denying the preliminary injunction.

## B. Minnesota Law

CEZ also argues that the district court erred under Minnesota law when it did not grant CEZ additional time to close on the property—either to fifteen additional days under § 559.211 or to two remaining days under § 559.21 based on a purportedly unexpired sixty-day termination deadline.

We first address whether CEZ was entitled to an additional fifteen days to close. Minnesota law provides that if an "injunction is granted pursuant to this subdivision, the contract shall not terminate until the expiration of 15 days after the entry of the order or decision dissolving or modifying the . . . injunction." Minn. Stat. § 559.211 subdiv. 1 (2024). Section 559.211 addresses temporary restraining orders and injunctions for contracts involving real estate transactions. It provides district courts with the authority "to enter an order temporarily restraining or enjoining further proceedings to effectuate the termination of the contract." *Id.*

CEZ argues that it should have been allowed an additional fifteen days to close after the January 29 order because the district court's December 29 stay order was an injunction. In "its accepted legal sense," an injunction is an equitable "*in personam*" order that requires a party "to do or refrain from doing a particular thing." *Injunction*, Black's Law Dictionary (12th ed. 2024). On the other hand, a stay is the "postponement or halting of a proceeding, judgment or the like." *Stay*, Black's Law Dictionary (12th ed. 2024). District courts have the "inherent power to stay proceedings." *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013). A court may use a stay "to control . . . its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). We determine the nature of an order "by a practical assessment of an order's effect and the substance of what the district court intended." *Window World Int'l, LLC v. O'Toole*, 21 F.4th 1029, 1034 (8th Cir. 2022). To do this, we may look to "the district court's intent as reflected in its order." *Id.*

Here, the district court's December 29 stay order provided that "[d]uring the stay, the parties' rights, claims, and defenses are preserved including those arising under law or the parties' written purchase agreement." Its January 29 order directly addressed CEZ's arguments, explaining that the December 29 order, "was not an order for injunctive relief" and, moreover, did not "extend[] any statutory deadline in the event of a denial of injunctive relief." It "did not intend for such an extension" and, to find "otherwise would be an amendment to the terms of the Agreement." Rather, its December order "was simply a standstill order designed to allow the parties to develop a more fulsome record for the [c]ourt's consideration and to enable the [c]ourt to hold an in-person hearing."

There can be no question that the district court intended to issue a stay order, not an injunction. The court's December 29 order stated that it was imposing a "stay," and the court confirmed this straightforward interpretation in its January 29 order. Further, the district court used the order in a way that we are accustomed to seeing stays used: "to control . . . its docket with economy of time and effort for itself, for counsel, and for litigants." *See Cottrell*, 737 F.3d at 1248. Accordingly, § 559.211 does not apply.

Finally, we address whether CEZ was entitled to two remaining days to close based on § 559.21's purportedly unexpired termination deadline. Under Minnesota law, a real estate purchase agreement terminates sixty days after the seller serves a termination notice. Minn. Stat. § 559.21, subdiv. 2a (2024). Here, the purchase agreement would have terminated on the deadline of December 31, 2023. The district court noted in its January 29 order that "the denial of the motion for injunctive relief puts the parties back into the position they were in on December 29, 2023—making [Prior's] termination of the Agreement on November 1, 2023 effective." CEZ argues that the district court erred in finding the termination effective on the December 31 deadline, asserting that CEZ should have the two remaining days to close that it would have had on December 29. But CEZ also concedes that § 559.21's sixty-day termination deadline only applies "absent a closing payment or injunction." As discussed, the district court's stay order was not

-8-

an injunction. It was an administrative action to pause court proceedings and did not extend external statutory deadlines. Therefore, the termination deadline remains unaffected and CEZ is not entitled to an additional two days under § 559.21.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____