# United States Court of Appeals for the Federal Circuit

---

**G. DAVID JANG, M.D.,**
*Plaintiff-Respondent,*

**v.**

**BOSTON SCIENTIFIC CORPORATION** AND
**SCIMED LIFE SYSTEMS, INC.,**
*Defendants-Petitioners.*

---

2014-134

---

On Petition for Permission to Appeal pursuant to 28 U.S.C. Section 1292(b) from the United States District Court for the Central District of California in No. 5:05-cv-00426-VAP-MRW, Judge Virginia Anne Phillips.

---

## ON PETITION

---

Before DYK, PLAGER, and LINN, *Circuit Judges.*

LINN, *Circuit Judge.*

### O R D E R

Boston Scientific Corporation and Scimed Life Systems, Inc. petition for permission to appeal an order of the United States District Court for the Central District of California that denied summary judgment. The district court certified the order for appeal under 28 U.S.C.

§ 1292(b). On June 9, 2014, this court ordered the parties to address whether this court has jurisdiction over this petition in light of *Gunn v. Minton*, 133 S. Ct. 1059 (2013), or whether this petition should be transferred to the United States Court of Appeals for the Ninth Circuit. We have considered the submissions of the parties and for the reasons provided here decline to transfer and deny the petition for interlocutory review.

BACKGROUND

This contract case comes before this court for a third time. The facts and procedural history of this contract case are set forth in *Jang v. Boston Scientific Corp.*, 532 F.3d 1330 (Fed. Cir. 2008) ("*Jang I*") and *Jang v. Boston Scientific Corp.*, 493 Fed. App'x 70 (Fed. Cir. 2012) ("*Jang II*"); we recount only those pertinent to this petition. Respondent Dr. G. David Jang, M.D. and petitioners entered into an agreement whereby Jang assigned his rights in various patents to petitioners in exchange for an upfront payment and a promise under defined circumstances to pay additional compensation if petitioners sold stents covered by Jang's patents.

In May 2005, Jang brought suit in federal court for breach of contract and other various state law claims, basing jurisdiction on diversity of citizenship and alleging that petitioners had failed to compensate Jang for the sale of certain covered stent products. In the first two appeals, this court addressed claim construction disputes relevant to whether the accused stents were covered by (*i.e.*, would have infringed) Jang's patents. While the case was on remand from this court after *Jang II*, petitioners filed requests for *ex parte* reexamination with the U.S. Patent and Trademark Office ("PTO"), asserting that the claims of Jang's patents were invalid. The PTO granted petitioners' requests to initiate reexamination, and the examiner rejected the claims. Because petitioners did not

respond to the office action or appeal, the claims at issue were canceled in issued reexamination certificates.

In light of the PTO proceedings, petitioners moved for summary judgment in the district court, arguing, *inter alia*, that under *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969), the parties' assignment agreement cannot require payment for practice of claims subsequently held to be invalid. In March 2014, the district court denied the motion. In doing so, the district court found that under this court's decision in *Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co.*, 112 F.3d 1561 (Fed. Cir. 1997) ("*Kohle*"), a patentee is not precluded under *Lear* from recovering royalties until the date the licensee or assignee first challenges the validity of the patent. Because the court concluded that Jang could seek royalties prior to a challenge to the validity of the patents, it denied the motion for summary judgment.

On petitioners' motion, the district court certified an interlocutory appeal of the order denying summary judgment pursuant to 28 U.S.C. § 1292(b) as to the following questions:

1. Where an assignor is suing under an assignment agreement for payments allegedly due for practicing claims now determined to be invalid, and where there is no allegation of dishonest or dilatory conduct on the part of the assignee, does the exception to *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969), identified in *Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co.*, 112 F.3d 1561 (Fed. Cir. 1997), apply?

2. If the *Kohle* exception does apply, what is the appropriate standard for its application where the assignee has never made payments on sales of the accused product and has consistently maintained that no such payments could be due because the claims cannot properly be construed to cover the

accused product and would be invalid under any construction that did cover the accused product?

This petition for permission to file an interlocutory appeal followed, and we directed the parties to address the jurisdictional question prior to consideration of the merits of the petition.

DISCUSSION

I.

Section 1292(b) vests the "Court of Appeals which would have jurisdiction of an appeal of such action," to decide, in its discretion, whether or not to permit an interlocutory appeal. 28 U.S.C. § 1292(b).

This court has exclusive jurisdiction to decide an appeal from a final decision of a district court in any civil action "arising under" any Act of Congress relating to patents. 28 U.S.C. §§ 1338(a), 1295(a)(1). Even though petitioners do not contend that federal patent law creates the asserted causes of action, we agree that this case nonetheless presents a patent issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065.

A.

In previously ruling that this court had jurisdiction over Jang's appeal, we noted that "[a]lthough this case arises from a contract claim, rather than directly as a patent infringement claim, Jang's right to relief on the contract claim as asserted in the complaint depends on an issue of federal patent law—whether the stents sold by [petitioners] would have infringed [Jang's patents]." *Jang I*, 532 F.3d at 1334 n.5. Nothing in the Supreme Court's decision in *Gunn* alters that conclusion.

In *Gunn*, the plaintiff alleged that his attorneys committed malpractice by failing to timely raise an exception to the on-sale bar in district court litigation that led to his patent being held invalid. 133 S. Ct. at 1062–63. After the state trial court granted summary judgment in favor of his attorneys, the plaintiff argued on appeal that the state court lacked jurisdiction because his claim arose under federal patent law. *Id.* at 1063.

The Supreme Court disagreed, holding that the patent issue underlying the malpractice case was "not substantial in the relevant sense" because that inquiry looks to "the importance of the issue to the federal system as a whole" and not the significance "to the particular parties in the immediate suit." *Id.* at 1066. Minton's malpractice claim was not substantial because the questions posed were only "backward-looking" and "hypothetical," and their importance was limited to the specific facts and parties in that case. *Id.* at 1066–67. Thus, the Court held that the patent issue was insufficient to establish federal "arising under" jurisdiction. *Id.* at 1068.

Here, by contrast, the disputed federal patent law issues presented by Jang's well-pleaded complaint are substantial and neither entirely backward-looking nor hypothetical. In addition to infringement, the court may be called upon to determine the extent to which validity is made relevant to the resolution of the breach-of-contract claim by the language of the contract itself. The Assignment Agreement defines "Contingent Payment Products" as "any stent . . . the development, manufacture, use, or sale of which is covered by one or more *Valid Claims of the Patents* . . . or which, but for the assignment made pursuant to this Agreement, would infringe one or more *Valid Claims of the Patents*." Assignment Agreement (Ex. A), § 1.1, at 2 (emphases added). The contract then states that "Valid Claim means (a) a claim of any issued patent which is contained within the [licensed patents] and which has not expired, lapsed, or *been held invalid*, un-

patentable or unenforceable by a final decision, which is unappealed or unappealable, of a court of competent jurisdiction, or of an administrative agency having authority over patents." *Id.* at 4 (emphasis added).[1]

Contract claims based on underlying ongoing royalty obligations, such as the ones at issue here, raise the real-world potential for subsequently arising infringement suits affecting other parties. In *Forrester Environmental Services, Inc. v. Wheelabrator Technologies, Inc.*, we differentiated between malpractice suits, such as the one in *Gunn*, and business disparagement disputes based on the potential for future state-federal and circuit splits:

> Those cases [finding Federal Circuit jurisdiction over false statement claims] may well have survived the Supreme Court's decision in *Gunn*. Unlike the purely "backward-looking" legal malpractice claim in *Gunn,* 133 S. Ct. at 1066–67, permitting state courts to adjudicate disparagement cases (involving alleged false statements about U.S. patent rights) could result in inconsistent judgments between state and federal courts. For example, a federal court could conclude that certain conduct constituted infringement of a patent while a state court addressing the same infringement question could conclude that the accusation of infringement was false and the patentee could be enjoined from making future public claims about the full scope of its patent as construed in federal court.

715 F.3d 1329, 1334 (Fed. Cir. 2013).

Under disputes like the one at issue here in which resolution of the contract claim itself requires resolution

---

[1]    In denying the petition, we express no view on the merits of this issue.

of underlying issues of infringement, there exists the possibility that the patentee would file suits alleging infringement by others and may even be contractually obligated to do so.[2] These suits have the potential of conflicting rulings particularly as to validity. Here, where suit was filed in federal court based on diversity of citizenship, the potential for inconsistent judgments affecting not only the parties to this dispute but other parties who might be sued in separate actions for infringement is particularly significant. Permitting regional circuits to adjudicate questions of patent validity, for example, could result in inconsistent judgments between a regional circuit and the Federal Circuit, resulting in serious uncertainty for parties facing similar infringement charges before district courts within that regional circuit. Maintaining Federal Circuit jurisdiction over such contractual disputes to avoid such conflicting rulings is important to "the federal system as a whole" and not merely "to the particular parties in the immediate suit." *Gunn*, 133 S. Ct. at 1066.

## B.

Jang argues that the Federal Circuit no longer has appellate jurisdiction because the PTO's cancellation of the claims in issue means the question of patent validity as it relates to the public at large can no longer be said to be "substantial." We disagree. Just as subject matter jurisdiction in diversity cases such as this one is determined on the facts as they existed at the time the claim was filed, *Grupo Dataflux v. Atlas Global Group, L.P.*, 124

---

[2] While in this case defendant Scimed held the patents, and the additional suits would be brought by Scimed, that does not undermine the general principle. Indeed, Scimed, at the time this litigation commenced, was planning to bring and later did bring suits against third parties alleging infringement of the patents.

S. Ct. 1920, 1924 (2004) (measuring "all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal"), the Federal Circuit's exclusive appellate jurisdiction is predicated on the cause of action and the basis of the facts as they existed at the time the complaint or any compulsory counterclaim was filed. 28 U.S.C. §§ 1338(a), 1295(a)(1). Thus, in assessing whether appellate jurisdiction in the appeal of a district court judgment in a diversity case is properly before the Federal Circuit, the court will look to whether the four-part *Gunn* test is met on the basis of the cause of action pled and the facts as they existed at the time the complaint or any compulsory counterclaim is filed.

Here, the actions of the PTO in cancelling the claims at issue did not take place until long after the complaint had been filed. Because the patent law issues raised in the complaint were at that time substantial for the reasons noted above, and because the *Gunn* test was otherwise met in all respects, jurisdiction of the petition is and properly remains before this court.

## II.

Petitioners seek this court's review of whether the district court correctly applied *Lear* and *Kohle*. 28 U.S.C. § 1292(b) authorizes a district court to certify for appeal an otherwise-unappealable order under circumstances in which it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" Ultimately, this court must exercise its own "discretion" in deciding whether to "permit an appeal to be taken" under this provision. *Id.*; *see also Digital Equip. Corp. v. Desktop*

*Direct, Inc.*, 511 U.S. 863, 883 n.9 (1994) (noting "broad" discretion); *In re Convertible Rowing Exerciser Patent Litig.*, 903 F.2d 822, 822–23 (Fed. Cir. 1990).

As a general proposition, our court grants interlocutory review in these multi-faceted patent cases only rarely. In this case, we decline to grant such review. There are several reasons why this case is not appropriate for such review. It is not clear that the legal issues identified in the questions will in fact be controlling, and each question depends on the resolution of factual issues not yet addressed by the district court.

Without taking any position on the merits of the issues presented, we conclude that the limited circumstances under which an interlocutory appeal might be permitted are not met in this case.

Accordingly,

IT IS ORDERED THAT:

This petition is denied.

FOR THE COURT

September 16, 2014
Dated

/s/ Daniel E. O'Toole
Daniel E. O'Toole
Clerk of Court