# United States Court of Appeals for the Federal Circuit

---

**WARSAW ORTHOPEDIC, INC., MEDTRONIC, INC., MEDTRONIC SOFAMOR DANEK, INC.,**
*Plaintiffs-Appellants*

**v.**

**RICK C. SASSO, M.D.,**
*Defendant-Appellee*

---

2019-1583

---

Appeal from the United States District Court for the Northern District of Indiana in No. 3:18-cv-00437-JD-MGG, Judge Jon DeGuilio.

---

Decided: October 14, 2020

---

MARK CHRISTOPHER FLEMING, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, argued for plaintiffs-appellants. Also represented by MARY VIRGINIA SOOTER, Denver, CO.

FREDERICK D. EMHARDT, Emhardt Law LLC, Carmel, IN, argued for defendant-appellee. Also represented by GEORGE T. PATTON, JR., Bose McKinney & Evans LLP, Washington, DC; JOHN M. BRADSHAW, Bradshaw Law LLC, Indianapolis, IN.

---

Before NEWMAN, SCHALL, and WALLACH, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

This appeal is from the decision of the United States District Court for the Northern District of Indiana,[1] dismissing a declaratory judgment complaint filed by Warsaw Orthopedic, Inc.; Medtronic, Inc.; and Medtronic Sofamor Danek, Inc. (collectively, "Medtronic") against Dr. Rick Sasso, a surgeon and inventor. The district court dismissed the complaint without prejudice, applying the doctrine of federal court "abstention" in view of the concurrent action in Indiana state court between the same parties concerning the same dispute; that decision is on appeal to the Indiana Court of Appeals.[2]

The state court action is described by Dr. Sasso as a contract case for payment for patent rights, and the federal action is described by Medtronic as a patent case in which payment requires valid patents. Medtronic argues that the district court's "abstention" was an abuse of discretion, because the federal courts have exclusive jurisdiction over patent cases, and patent validity is fundamental to resolution of this dispute. Thus, Medtronic argues that abstention was inappropriate because the federal court had the obligation to receive and resolve this dispute.

We conclude that the district court acted within its discretion, abstaining without prejudice, on the facts hereof, for the question of contract interpretation is on appeal in

---

[1]    *Warsaw Orthopedic, Inc. v. Sasso*, No. 3:18-CV-437 JD, 2019 WL 428574 (N. D. Ind., Jan. 31, 2019) ("Dist. Ct. Op.").

[2]    *Warsaw Orthopedic, Inc. v. Sasso*, Appeal No. 19A-PL-00378 (Ind. Ct. App., docketed Feb. 19, 2019).

the Indiana state court, and federal action based on the federal issues is not precluded.

## DISCUSSION

Medtronic's declaratory judgment complaint requests a declaration that Medtronic did not violate its royalty payment obligation as set forth in a certain Purchase Agreement between Medtronic and Dr. Sasso ("Agreement"). The Agreement, also called the Facet Screw Agreement, is dated December 1, 1999 and states Medtronic's terms of purchase of certain Dr. Sasso inventions. The Agreement provides for quarterly royalty payments based on Medtronic's sales of the defined Medical Device until "the last to expire of the patents included in Intellectual Property Rights, or if no patent application(s) issue into a patent having valid claim coverage of the Medical Device, then seven (7) years from the Date of First Sale of the Medical Device." Agreement ¶ 7.

For the invention at issue, the initial patent application was filed on November 23, 1999, and two patents were issued: U.S. Patent No. 6,287,313 ("the '313 patent") and its continuation, U.S. Patent No. 6,562,046 ("the '046 patent"); both patents are entitled "Screw Delivery System and Method." The record states that Medtronic made royalty payments from 2002 to 2018.

### *Proceedings in Indiana state court*

A dispute arose, for Dr. Sasso stated that Medtronic was not paying royalties on sales of all relevant devices, but Medtronic disagreed. In June 2014, Dr. Sasso filed suit in Marshall Circuit Court, County of Marshall, State of Indiana, for breach of contract and damages.[3] Medtronic

---

[3]    Dr. Sasso added counts concerning the Facet Screw Agreement to a similar suit on a different agreement—the Vertex Agreement. Prior to the Facet Screw Agreement

answered that the devices for which Dr. Sasso is seeking additional royalties are not subject to the Agreement because they are not covered by a valid claim of the '313 or '046 patents. Dr. Sasso then filed a "Motion for Summary Judgment on the Term of the Screw Delivery Agreement and on Patent Validity as a Defense to Payment." The state court granted the motion, ruling:

> The amount of money to be paid under the Agreement and the term depend on the issuance of patents and their expiration, not their validity. Patent No. 6,287,313 ("'313 patent") or 6,562,046 ("'046 patent") issued and have not expired.

Summ. J. Order, Marshall Circuit Court, No. 50C01-1806-PL-000027 (Sept. 13, 2018). The state court excluded the issue of validity from the jury trial. *See* Order Excluding Witnesses and Striking the Affirmative Defense of Patent Invalidity, No. 50C01-1806-PL-000027 (Sept. 13, 2018) ("All evidence related to the defense of patent invalidity is excluded.").

At the trial, the parties disagreed over whether any claim covered the asserted products. Dr. Sasso testified that claim 26 of the '313 patent is "really really broad." Trial Tr. Nov. 9, 2018, at 51. Medtronic was not permitted to raise any questions concerning the validity of claims of the asserted scope.

The jury found that Medtronic had breached the Agreement, and awarded damages. Judgment on the verdict was

---

counts being added, Medtronic had removed the Vertex Agreement suit to federal court, and the federal court remanded to the state court. *Sasso v. Warsaw Orthopedic, Inc.*, No. 3:13-cv-1031 (N.D. Ind. Apr. 2, 2014) (remand order).

entered on November 29, 2018.  Medtronic filed an appeal to the Indiana Court of Appeals.

### *The federal declaratory judgment action*

Meanwhile, on June 8, 2018, Medtronic filed this declaratory judgment action in federal district court in Indiana.  The complaint contains two counts, captioned as follows:

### COUNT I

Declaratory Judgment of No Breach of the Facet Screw Agreement Because No Valid Claim of the '313 or '046 Patent Covers the Medtronic Products for Which Dr. Sasso Seeks Royalties

### * * *

### COUNT II

Declaratory Judgment of No Breach of the Facet Screw Agreement Because No Claim of the '313 or '046 Patents, as Construed by Dr. Sasso, Is Valid

Complaint, at 13–14.  Medtronic stated in the complaint that the devices for which Dr. Sasso seeks additional royalties are not within the Agreement, and the claims as construed to cover such devices are not valid as required by the Agreement.

In September 2018, Dr. Sasso moved the district court for "abstention or stay" of the declaratory action, citing the scheduled November 2018 trial in state court.  The district court did not act before that trial.  After the state court judgment in favor of Dr. Sasso, he moved the federal court for dismissal of Medtronic's declaratory action, stating that the federal court did not have jurisdiction because the matter had been decided.  Medtronic opposed dismissal, arguing that the state court erred in law by refusing to permit Medtronic's defenses concerning invalidity of the claims as construed to cover the additional Medtronic devices.

The district court dismissed the declaratory judgment action without prejudice, stating that:

> Here, there is no purpose to be served by the declaratory judgment Medtronic seeks, at least at this time. Medtronic is asking for a declaratory judgment that it did not breach the Facet Screw Agreement and does not owe Dr. Sasso any damages. But the state court has already entered judgment in Dr. Sasso's favor on that claim. No order or judgment of this Court can undo that judgment—only the Indiana courts of appeals and the United States Supreme Court have authority to review that judgment.

Dist. Ct. Op. at *3. The district court acknowledged that the state court decision was being appealed, and that "it is possible that the state judgment will be vacated at some point," but that such possibility did not affect the present situation. *Id.* The district court also cited "the discretion provided by the Declaratory Judgment Act, assuming but not deciding that jurisdiction exists." *Id.* at *2. The court exercised this discretion and dismissed the action.

Medtronic now appeals this dismissal, stating that the federal courts have exclusive jurisdiction over issues of patent validity, valid claims are required by the Agreement, and the state court erred in ruling that validity is irrelevant to royalty payments under the Agreement. Medtronic points to the requirement in ¶ 7 for "valid claim coverage":

> 7. <u>Term of Agreement</u>. . . . Unless sooner terminated, this Agreement shall expire upon the last to expire of the patents included in Intellectual Property Rights, or if no patent application(s) issue into a patent having valid claim coverage of the Medical Device, then seven (7) years from the Date of First Sale of the Medical Device. . . .

Agreement ¶ 7. Medtronic also points to the Schedules in the Definitions of the Facet Screw Agreement's subject matter:

> 1. Definitions.
>
> A. The Invention. The Invention shall mean any product, method or system relating to a facet screw instrumentation and a headless facet screw fixation system as described in Schedule A, attached hereto.
>
> * * *
>
> C. Medical Device. Medical Device shall mean any device, article, system, apparatus or product including the Invention. Such Medical Devices shall be listed in accordance with SDH [Sofamor Danek] catalog numbers and will be listed in Schedule B attached hereto. . . .

Agreement ¶ 1. Medtronic states: "Schedule A describes a 'Facet Screw Instrumentation and a Headless Facet Screw Fixation System consisting of bone screws and associated instruments for installation thereof.' . . . Schedule B lists 'Facet Screw Instrumentation, and A Headless Facet Screw Fixation System,'" with no listed catalog numbers. Medtronic Br. 8 n.3.

Medtronic states that royalties under the Agreement are based on the products set forth in the Agreement Schedules, and that those royalties were regularly and fully paid. Medtronic states that this dispute concerns "whether Medtronic owes royalties on other products *not* listed in Schedules A or B." *Id.* (emphasis in original). Medtronic further states that valid claim coverage is required by the Agreement, that patent validity is within exclusive federal jurisdiction, and that the claims as construed by Dr. Sasso are invalid.

Dr. Sasso states: "Right or wrong, this state court ruling is binding." Sasso Br. 21.

### *Patent reexamination*

Medtronic had, on May 1, 2018, requested Patent and Trademark Office reexamination of designated claims of the '313 patent and on July 20, 2018, of designated claims of the '046 patent. The PTO granted the reexaminations, and by Reexamination Certificate No. 90/014,131 issued January 4, 2019, the PTO cancelled claims 26–34 of the '313 patent; and by Reexamination Certificate No. 90/014,171 issued January 24, 2019, the PTO cancelled claims 9 and 11–32 of the '046 patent.

It appears undisputed that the PTO cancellations included all the claims that had been construed to cover the additional Medtronic devices for which royalties were sought. Medtronic Br. 15–16 & n.6. The district court acknowledged the reexaminations and stated that they are "not relevant here." Dist. Ct. Op. at *1 n.3. Medtronic states that they are relevant to the requirement for coverage by valid claims under Agreement ¶ 7.

### *Federal jurisdiction*

Dr. Sasso challenges federal jurisdiction. Dr. Sasso states that the counts of the declaratory judgment complaint do not "arise under" the patent law, and thus the district court does not have jurisdiction under 28 U.S.C. § 1338. Dr. Sasso states that if the district court does have jurisdiction, then the court acted within its discretion in abstaining from the declaratory action. He also states that the Federal Circuit does not have jurisdiction over this appeal and that if appeal is available at all, it lies in the Seventh Circuit, not the Federal Circuit.[4]

---

4    28 U.S.C. § 1338(a) assigns to the federal district courts original jurisdiction over "any civil action arising

Medtronic states that district court and Federal Circuit jurisdiction are present because the declaratory judgment complaint includes determinations of patent validity and valid claim scope.  Medtronic argues that this declaratory action meets the "arising under" standard for federal jurisdiction, for the federal issues of patent validity and patent claim scope are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  In *NeuroRepair, Inc. v. Nath Law Group*, 781 F.3d 1340 (Fed. Cir. 2015), this court elaborated that "[a]n issue of patent law is 'necessarily raised' if 'a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.'" *Id.* at 1344 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988)).

An appellate court has "traditional and inherent functions [such] as determining its own jurisdiction and supervising the exercise of jurisdiction by the district courts below it." *Shaw v. Gwatney*, 795 F.2d 1351, 1353 n.2 (8th Cir. 1986).  "[I]t is the duty of this court at all times to consider its own jurisdiction." *Smith v. Gober*, 236 F.3d 1370, 1371 (Fed. Cir. 2001); *see also C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 878 (Fed. Cir. 1983) (appellate court has jurisdiction to decide whether the district court had jurisdiction).

Applying the standards of precedent, the issues of validity and claim scope are well-pleaded in this declaratory

---

under any Act of Congress relating to patents," and 28 U.S.C. § 1295(a)(1) assigns exclusive appellate jurisdiction to the Federal Circuit for those district court decisions.

complaint, are actually disputed, are substantial to the federal system as a whole, and the federal-state judicial balance would not be disrupted by the district court's exercise of declaratory jurisdiction. Thus, this declaratory action is within the district court's jurisdictional authority, and we have jurisdiction to receive this appeal and to determine whether the district court abused its discretion in abstaining from exercise of declaratory jurisdiction.

### *The district court's abstention*

The Declaratory Judgment Act states that courts *may* grant declaratory relief, 28 U.S.C. § 2201(a), and the Supreme Court has explained that the Act confers "unique and substantial discretion in deciding whether to declare the rights of litigants," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Also, the Court had stated in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), that federal courts may and reasonably should abstain from exercising declaratory jurisdiction when the issues "can better be settled in [a] proceeding pending in . . . state court." *Id.* at 495.

As summarized in *Envision Healthcare, Inc. v. PreferredOne Insurance Co.*, 604 F.3d 983 (7th Cir. 2010): "Under what is known as the *Wilton/Brillhart* abstention doctrine, district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims." *Id.* at 986. The propriety of a district court's *Wilton/Brillhart* abstention is reviewed on the standard of abuse of discretion, that is, whether the action "is based on clearly erroneous findings of fact, is based on erroneous interpretations of the law, or is clearly unreasonable, arbitrary or fanciful." *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1376 (Fed. Cir. 2011).

Medtronic and Dr. Sasso discuss, but do not resolve, whether the criterion for measuring abstention discretion is the potentially more flexible measure of *Wilton/Brillhart*

or the standard of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). In *Colorado River*, the Court stated that abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," stating that abstention is appropriate "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* at 813.

The thrust of precedent applying *Colorado River* is that a federal proceeding should not be stayed in favor of a state proceeding when the federal proceeding includes a claim over which federal courts have exclusive jurisdiction. *See, e.g., Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013) ("[W]e join the Second, Seventh, and Ninth Circuits and hold that the *Colorado River* doctrine may not be used to stay or dismiss a federal proceeding in favor of a concurrent state proceeding when the federal proceeding contains a claim over which Federal courts have exclusive jurisdiction.").

The district court here selected the standard of *Wilton*/B*rillhart* as attuned to the situation at hand. Dist. Ct. Op. at *2. We agree that this was reasonable on the facts here, for there had already been a trial in the state court and it is now on appeal at the Indiana Court of Appeals. The district court also referred to the Northern District's 2014 rebuff of Medtronic's attempted removal to federal court, *see supra* n.3, although the district court remarked that this prior action is not *res judicata*. *Id.* at *1 n.2.

Applying the standard of abuse of discretion, "it is appropriate to vest district courts with that discretion 'in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp.'" *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1288 (Fed. Cir. 2007) (quoting *Wilton*, 515 U.S. at

289).  Medtronic challenges this exercise of discretion, arguing that patent validity is essential to Dr. Sasso's claim and was wrongly excluded from the state court trial, producing a fatal flaw in the state court proceeding.

In *Wilton*, the Supreme Court guided that the federal court must apply, to the facts before it, "a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power."  515 U.S. at 287 (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 243 (1952)).  The Court explained that the Declaratory Judgment Act was designed to create "an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants."  *Id.* at 288.  The Court stated that the federal court should consider the effect of the concurrent state court proceeding and "whether the claims of all parties in interest can satisfactorily be adjudicated in [the state court] proceeding."  *Id.* at 283 (quoting *Brillhart*, 316 U.S. at 495).

Precedent illustrates that the discretion to decline declaratory judgment jurisdiction is not unlimited.  For example, in *Capo, Inc. v. Dioptics Medical Products, Inc.*, 387 F.3d 1352 (Fed. Cir. 2004), this court held that it was an abuse of discretion to dismiss a declaratory action challenging patent validity, when the dismissal left the accused infringer "unable to resolve its accused liability for patent infringement."  *Id.* at 1357; *see also Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 823 (7th Cir. 2016) ("[T]here are numerous circumstances in which a court appropriately accords priority to a non-merits threshold inquiry other than subject matter jurisdiction, such as pendent jurisdiction, forum non conveniens, abstention, and others.").  Medtronic also cites *Jang v. Boston Scientific Corp.*, 767 F.3d 1334 (Fed. Cir. 2014), where the court held that discretionary dismissal was improper when "resolution of the contract claim [] requires resolution of underlying issues of infringement," *id.* at 1337, including the scope and validity of the relevant patents, and there exists

the possibility that those issues could arise in subsequent infringement litigation and could create divergent judgments unless the court maintains appellate jurisdiction, *id.* at 1338. Medtronic reminds us that federal courts are not bound by a state court decision on a matter of federal law and argues that this too supports proceeding with federal action.

Dr. Sasso responds that "[c]ommercial agreements traditionally are the domain of state law" and "[s]tate law is not displaced merely because the contract relates to intellectual property which may or may not be patentable." Sasso Br. 23 (quoting *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979)). In *Gunn*, the Court affirmed that malpractice claims against a patent attorney are the province of the states' "special responsibility for maintaining standards among members of the licensed professions," and that it did not trigger the federal court's exclusive patent jurisdiction. 568 U.S. at 264; *see also Christianson*, 486 U.S. at 813–17 (discussing scope of "arising under" jurisdiction).

The Court's guidance recognizes the variety of circumstances in which both state and federal questions are present, and states in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), that "questions of [federal] jurisdiction over state-law claims require careful judgments about the nature of the federal interest at stake," distinguishing a "sufficient condition for federal-question jurisdiction [from] a necessary one." *Id.* at 317 (internal quotation marks and citations omitted).

Precedent illustrates the variety of circumstances that may arise, whereby discretion is exercised on various facts, including whether preclusion should be afforded to a state court's ruling on an aspect otherwise properly before the federal court. For example, in *General Motors Corp. v. Romein*, 503 U.S. 181 (1992), the Court held that in applying

the Contract Clause, federal courts are "bound to decide for ourselves whether a contract was made," affording "respectful consideration and great weight," but not conclusive deference, "to the views of the State's highest court." *Id.* at 187 (quoting *Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 100 (1938)). In *Titus v. Wallick*, 306 U.S. 282 (1939), the Court distinguished the deference due to a state court's application of the "law of its own state or matters peculiarly within its cognizance." *Id.* at 288. Medtronic reminds us that for this Agreement the Indiana court was required to apply Tennessee law, suggesting that this diminished any entitlement to deference on contract issues.

Medtronic also cites *Bouie v. City of Columbia*, 378 U.S. 347 (1964), where the Court disagreed with the state court's interpretation of state trespass law to avoid federal due process. *Id.* at 361–62. Medtronic states that precedent shows that preclusion "may in some contexts" be subject to "[d]octrines of federal pre-emption." *Durfee v. Duke*, 375 U.S. 106, 114 (1963) (citing *Kalb v. Feuerstein*, 308 U.S. 433, 439 (1940)). As summarized in concurrence in *Grable,* there is room for discretion:

> The Court faithfully applies our precedents interpreting 28 U.S.C. § 1331 to authorize federal-court jurisdiction over some cases in which state law creates the cause of action but requires determination of an issue of federal law, *e.g.*, *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). . . . Whatever the virtues of the *Smith* standard, it is anything but clear. *Ante*, at 2367 (the standard "calls for a 'common-sense accommodation of judgment to [the] kaleidoscopic situations' that present a federal issue, in 'a selective process which picks the substantial causes out of the web and lays the other ones aside.'" (quoting

*Gully v. First Nat. Bank in Meridian*, 299 U.S. 109,
117-118 (1936))) . . . .

545 U.S. at 320–21 (Thomas, J., concurring).

On the entirety of the circumstances, we conclude that the district court exercised "common-sense accommodation of judgment," *id.*, and did not abuse its discretion in abstaining and dismissing without prejudice.

CONCLUSION

The decision of the district court is affirmed.

**AFFIRMED**