NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SYMBIONT NUTRITION, LLC, et al.,
*Plaintiffs/Appellees*,

v.

BJM FEED INGREDIENTS, LLC, et al.,
*Defendants/Appellants*.

No. 1 CA-CV 21-0218
FILED 5-19-2022

Appeal from the Superior Court in Maricopa County
No.  CV2019-097220
The Honorable David J. Palmer, Judge

**VACATED AND REMANDED**

COUNSEL

Bueler Jones, LLP, Chandler
By Gordon S. Bueler
*Counsel for Plaintiffs/Appellees*

Snell & Wilmer, LLP, Phoenix
By Cory L. Braddock, Andrew M. Jacobs
*Counsel for Defendants/Appellants*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge David B. Gass joined.

---

**M O R S E**, Judge:

¶1           BJM Feed Ingredients, LLC, John Link, and Matrix Nutrition of Texas, LLC (collectively "Defendants") appeal the superior court's entry of a preliminary injunction on behalf of Symbiont Nutrition, LLC and Mark Holt (collectively "Plaintiffs").  Because the superior court erred, we vacate the injunction.

### FACTS AND PROCEDURAL BACKGROUND

¶2           In 2016, the United States Patent and Trademark Office issued Mark Holt and Matthew Garner a patent for a manufacturing process for dairy cow feed.  The resulting feed, OZ45, purports to increase cows' protein levels and, in turn, improve their reproduction rates and milk production.  The patented process involves heat-treating and extruding corn.

¶3           After receiving the patent, Holt transferred his patent rights to Symbiont Nutrition, LLC ("Symbiont") to license the patented process. Symbiont is an Arizona limited liability company and Holt is its sole member.  Garner did not assign his patent rights and, at the time of the preliminary injunction hearing, still retained his rights in the patent.

¶4           In 2017, Holt and John Link formed Matrix Nutrition of Texas, LLC ("Matrix"), a Texas limited liability company created to manufacture and sell feed using the patented process.  Holt and Link each held a 50% membership interest in the company.  In February 2018, Symbiont and Matrix entered a Patent and Know-How License Agreement.  The license agreement licensed use of the patent to Matrix and provided know-how regarding the patented process.  The agreement required Matrix to "return any and all confidential or trade-secret materials" and "permanently stop [its] use of all Licensed Process(es) and all Licensed Product(s)" when the agreement ended.  Plaintiffs also allege Symbiont and Matrix entered a confidentiality and non-disclosure agreement, which required Matrix to keep confidential all information related to Symbiont's patent.  Plaintiffs,

however, failed to produce documentary evidence substantiating this allegation, and Defendants contest the existence of such an agreement.

¶5          In March 2018, Symbiont entered a similar Patent and Know-How License Agreement with BJM Feed Ingredients, LLC ("BJM"), a Pennsylvania limited liability company.  Link is also a member of BJM through Link Feed Ingredients, LLC.  The scope of the license granted in the BJM agreement is identical to the license granted to Matrix.  In exchange, BJM agreed to pay Symbiont royalties for feed sold using its process.  Upon termination, the agreement required BJM to "return any and all confidential or trade-secret materials" to Symbiont, "permanently stop" its use of the patented process, and hand over "all unpatented data and know-how" BJM developed "in the course of [its] efforts to develop Licensed Products and Licensed Processes."  Further, Symbiont and BJM entered a Non-Disclosure and Non-Circumvention Agreement ("NDA").  The NDA prohibited BJM from disclosing "any proprietary, confidential and/or trade secret information of [Symbiont]."

¶6          In March 2019, Holt resigned from Matrix and sold his membership interest to Link.  The same day, Symbiont and Matrix ended their license agreement.  Days later, Matrix filed termination paperwork with the Texas Secretary of State.  In May 2019, the Secretary of State filed a certificate of termination, dissolving Matrix as an entity.

¶7          In June 2019, BJM terminated its license agreement with Symbiont.  And, in October 2019, BJM began working with Garner to manufacture feed.  At the end of October, Plaintiffs filed this lawsuit against Defendants.  Plaintiffs allege four counts: (1) BJM breached its license agreement and NDA with Symbiont; (2) Matrix breached its NDA with Symbiont; (3) BJM and Matrix converted Plaintiffs' "assets, monies and intellectual property"; and (4) Link breached his fiduciary duties of care and loyalty to Holt.

¶8          Matrix moved to dismiss counts two and three for lack of subject matter jurisdiction, arguing both claims arose under patent law subject to exclusive federal jurisdiction.  The superior court denied Matrix's motion, stating it "agree[d] with Plaintiff's position" that "the resolution of the case is not dependent on the application of patent law or a determination that a patent has been infringed, and/or that patent law does not 'in any sense' create the breach of contract or conversion claims at issue here[.]"

¶9 Subsequently, Plaintiffs moved for a preliminary injunction against Defendants. Specifically, Plaintiffs asked the court to enjoin Defendants from "the continued use of Plaintiffs' patents" and "transferring or otherwise distributing Plaintiffs' patent and proprietary information, technology and know-how." After several delays, the court held an evidentiary hearing on Plaintiffs' motion in October 2020. At the conclusion of the hearing, the court requested the parties submit written closing arguments.

¶10 The court granted Plaintiffs' motion and enjoined Defendants from (1) "manufacturing or selling OZ45 using Plaintiff[s'] patented process and know-how"; (2) "discussing Plaintiff[s'] patented process and know-how with other persons or entities"; and (3) "soliciting others to use Plaintiff[s'] processes, information, know how, technology and any improvements." The court also ordered the Defendants to "return all confidential and trade and secret information" they received under both the BJM and Matrix licensing agreements.

¶11 Defendants timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(5)(b).

**DISCUSSION**

I. **Subject-Matter Jurisdiction.**

¶12 As a threshold issue, we must address Defendants' argument that federal patent law preempts Plaintiffs' claims because the claims hinge on whether Defendants' conduct infringed Plaintiffs' patent. We review the superior court's jurisdiction de novo, *Medina v. Ariz. Dep't. of Transp.*, 185 Ariz. 414, 417 (App. 1995), and conclude state courts may hear state-law claims that implicate "run-of-the-mill question[s] of infringement," *Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*, 938 F.3d 1355, 1369 (Fed. Cir. 2019).

¶13 Federal courts have exclusive jurisdiction, effectively preempting state-court jurisdiction, over any case "arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). A case can "arise under" federal patent law in two ways. *Gunn v. Minton*, 568 U.S. 251, 257 (2013). First, a case arises under federal patent law when federal patent law creates the cause of action. *Id.* Second, in instances "where a claim finds its origins in state rather than federal law," the Supreme Court has "identified a 'special and small category' of cases in which arising under jurisdiction still lies." *Id.* at 258 (citation omitted). *Gunn* clarified that exclusive "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily

4

raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* A plaintiff's claim must satisfy all four prongs of the test for exclusive federal jurisdiction to lie. *Id.*

¶14 Because exclusive federal jurisdiction is an issue of federal law, we look to the decisions of the federal courts "as persuasive authority." *Arizonans for Second Chances, Rehab., & Pub. Safety v. Hobbs*, 249 Ariz. 396, 412, ¶ 60 n.6 (2020).[1] Recently, in *Blackhawk Network Inc. v. SL Card Co. Inc.*, the United States District Court for the District of Arizona dismissed a state-law breach of contract claim for lack of subject-matter jurisdiction even though the claim depended on adjudicating issues of patent infringement. --- F. Supp. 3d ---, ---, 2022 WL 704032, at *9-11 (D. Ariz. Mar. 9, 2022).[2] We proceed using *Blackhawk* as a guide.

¶15 All four of Plaintiffs' claims originate in state law but exclusive federal jurisdiction may still lie if those claims fall under the "special and small category" of state-law claims that raise substantial questions under federal patent law. Although the parties debate whether Plaintiffs' claims necessarily raise a disputed patent issue, we need not resolve this disagreement:

> Even assuming the claims necessarily raise a federal patent law issue, and the issue is actually disputed, . . . the issue is not "substantial" in the relevant sense. The substantiality inquiry is focused not "on the importance of the issue to the plaintiff's case and to the parties before it," but rather on "the importance of the issue to the federal system as a whole."

---

[1] Other state's courts have reached contradictory decisions on this point. *Compare Point Conversions, LLC v. WPB Hotel Partners, LLC*, 324 So. 3d 947 (Fla. Dist. Ct. App. 2021) (determining that state-law claims that turned on issues of patent infringement were not preempted ), *review granted*, SC21-1071, 2021 WL 5804319 (Fla. Dec. 7, 2021), *with Point Conversions, LLC v. Omkar Hotels, Inc.*, 321 So. 3d 326 (Fla. Dist. Ct. App. 2021) (deciding that essentially identical state-law claims were subject to exclusive federal jurisdiction).

[2] The district court recently amended its decision but did not change its federal jurisdiction analysis. *See Blackhawk Network Inc. v. SL Card Co. Inc.*, CV-21-00813-PHX-MTL, 2022 WL 1136633, at *1-2 (D. Ariz. Apr. 18, 2022).

*Id.* at ---, *9 (quoting *Gunn*, 568 U.S. at 260).

¶16        As in *Blackhawk*, "[t]he patent law issues implicated in this case carry no such significance." *Id.* at ---, *9; *see also Inspired Dev.*, 938 F.3d at 1364 (stating the "touchstone" for substantiality is whether state-court involvement would undermine uniform patent law). Federal courts have developed a three-factor test to guide the substantiality inquiry:

> A substantial federal issue is more likely to be present if:
>
> a) a pure issue of federal law is dispositive of the case,
>
> b) the court's resolution of the issue will control numerous other cases, [and]
>
> c) the Government has a direct interest in the availability of a federal forum to vindicate its own administrative action.

*Inspired Dev.*, 938 F.3d at 1364 (cleaned up and citation omitted).

¶17        All three factors weigh against considering Plaintiffs' claims as raising a substantial federal patent issue. First, Plaintiffs' claims "involve[] a question of federal law, at most, as only one of several elements needed to prevail." *NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340, 1346 (Fed. Cir. 2015). While issues of federal patent law may be embedded in Plaintiffs' claims, the resolution of their claims rests ultimately on the application of Arizona law, not federal patent law. To succeed on counts one and two, Plaintiffs must prove the existence and validity of the licensing and nondisclosure agreements, that these agreements governed Defendants' conduct, and that Defendants' conduct violated the agreements. Similarly, Plaintiffs' conversion claim turns on a showing of Plaintiffs' ownership or right to possession of certain property and Defendants' wrongful interference with that property. *Autoville, Inc. v. Friedman*, 20 Ariz. App. 89, 91-92 (1973). Finally, Plaintiffs' fiduciary duty claim rests on Plaintiffs proving the existence of such a duty and Defendants' breach of that duty. Arizona law, not federal patent law, is dispositive of each of these claims. *See Blackhawk*, --- F. Supp. 3d at ---, 2022 WL 704032, at *10-11 (finding an issue of federal patent law was not dispositive when a breach of contract claim required the court to determine whether one set of patents infringed on another set of patents). Accordingly, the first factor cuts against treating the patent issue as substantial.

¶18            Second, because the state court's resolution of any embedded patent issues in this case "will have no real-world impact on the validity, scope, or ownership of the parties' patent[ ]," any patent issues amount to a "hypothetical 'case within a case.'"  *Id.* at ---, *11; *see also NeuroRepair*, 781 F.3d at 1347 ("If the state court action would neither affect the scope of any live patent nor require resolution of a novel issue of patent law, it is unclear how it could control numerous other cases or impact the federal system as a whole.").  Although the adjudication of Plaintiffs' claims may require the court to determine whether Defendants used a feed-manufacturing process that infringed on Plaintiffs' patented process, there is little to suggest that the state court's analysis of this issue "will affect uniformity in patent law." *Inspired Dev.*, 938 F.3d at 1366; *see also Gunn*, 568 U.S. at 262 ("[F]ederal courts are of course not bound by state court case-within-a-case patent rulings.").  Indeed, the embedded patent issues in this case are "fact-bound and situation-specific" and will have no precedential effect on federal courts or federal patent law generally.  *See Gunn*, 568 U.S. at 263 (stating that even if "a state court's case-within-a-case adjudication may be preclusive under some circumstances," the resulting "'fact-bound and situation-specific' effects are not sufficient to establish federal arising under jurisdiction" (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006))).  Nor do Plaintiffs' claims raise novel patent issues.  To the extent they raise patent issues, they are ones of basic infringement.  *See Inspired Dev.*, 938 F.3d at 1366-67 (noting *Gunn* "suggests that state courts can faithfully apply federal precedent to embedded issues of basic infringement and invalidity in a particular case").  Thus, the second factor also militates against substantiality.

¶19            Third, "[g]iven the 'fact-bound' nature of the embedded patent law issues" in this case, the government has no direct interest litigating this suit in a federal forum.  *Id.* at 1368-69 (quoting *MDS (Can.) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013)).  Plaintiffs' claims implicate only one potential patent issue: whether Defendants' feed manufacturing process infringed Plaintiffs' patent in violation of the parties' agreements.  *See Blackhawk*, --- F. Supp. 3d at ---, 2022 WL 704032, at *11 (finding no direct government interest where the dispute "involve[d] comparing the claims of four particular patents to determine whether this particular invention was impermissibly used by these particular Defendants").  Because the "government interest in having any single case of patent infringement heard in a federal forum is limited," the final factor additionally counsels against substantiality. *Inspired Dev.*, 938 F.3d at 1369 (quoting *MDS*, 720 F.3d at 842).

¶20 Defendants rely extensively on *Jang v. Boston Scientific Corporation*, 767 F.3d 1334 (Fed. Cir. 2014) to argue the patent issues are substantial because Plaintiffs' claims are "neither entirely backward-looking nor hypothetical." Defendants' reliance on *Jang* is misplaced. *Jang* addressed whether a claim filed in federal court on diversity of citizenship grounds should be appealed to the Federal Circuit or a regional circuit. *Id.* at 1338. This issue is materially different from determining whether a state-law claim touching on issues of patent infringement should be heard in state or federal court. As *Inspired Development* explains, "the reasoning in *Jang* turned on the *system-wide* conflict that could arise in the federal courts if regional circuits reached different conclusions about validity." 938 F.3d at 1365. Thus, "[g]iven the 'serious uncertainty' of whether a district court would follow its regional circuit or the federal circuit, such conflicts raised 'substantial' concerns for the federal system[,]" and the patent issues were substantial enough to confer jurisdiction on the Federal Circuit. *Id.* (citation omitted). Even if the patent issues here are not entirely backward-looking or hypothetical, the risk of creating a system-wide conflict in the federal courts is absent. Accordingly, unlike in *Jang*, in this case, Plaintiffs' claims do not raise substantial federal patent issues. *See Gunn*, 568 U.S. at 262 ("If the question arises frequently, it will soon be resolved within the federal system, laying to rest any contrary state court precedent; if it does not arise frequently, it is unlikely to implicate substantial federal interests.").

¶21 In sum, even though the issue of patent infringement might be "vitally important" to deciding Plaintiffs' four state-law claims, "something more, demonstrating that the [patent] question is significant to the federal system as a whole, is needed" to establish exclusive federal jurisdiction. *Gunn*, 568 U.S. at 263-64. That "something more" is missing here. Accordingly, the superior court correctly denied Defendants' motions to dismiss.

## II. Preliminary Injunction.

¶22 We turn now to whether the superior court properly enjoined Defendants. We review the superior court's grant of a preliminary injunction for an abuse of discretion. *Shoen v. Shoen*, 167 Ariz. 58, 62 (App. 1990). "An abuse of discretion exists if the superior court applied the incorrect substantive law or preliminary injunction standard, based its decision on an erroneous material finding of fact, or applied the appropriate preliminary injunction standard in a manner resulting in an abuse of discretion." *TP Racing, L.L.L.P. v. Simms*, 232 Ariz. 489, 492, ¶ 8 (App. 2013).

¶23        A party seeking a preliminary injunction must establish: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable harm if the relief is not granted, (3) the balance of hardship favors the party seeking injunctive relief, and (4) public policy favors granting the injunctive relief." *Fann v. State*, 251 Ariz. 425, 432, ¶ 16 (2021).  The crucial factor is relative hardship, which requires the movant to show either "1) probable success on the merits and the possibility of irreparable injury; or 2) the presence of serious questions and the balance of hardships tips sharply in the [movant's] favor." *Schoen*, 167 Ariz. at 63 (citation and internal quotation marks omitted).  "The greater and less reparable the harm, the less the showing of a strong likelihood of success on the merits need be.  Conversely, if the likelihood of success on the merits is weak, the showing of irreparable harm must be stronger." *Fann*, 251 Ariz. at 432, ¶ 16 (quoting *Smith v. Ariz. Citizens Clean Elections Comm'n*, 212 Ariz. 407, 410 ¶ 10 (2006)).

¶24        The superior court erred when it relied on *Smith International Inc. v. Hughes Tool Co.*, 718 F.2d 1573 (Fed. Cir. 1983) to conclude "immediate irreparable harm is presumed" in patent-infringement cases.  In *eBay Inc. v. MercExchange, LLC*, the Supreme Court rejected any presumption of irreparable harm and held that "traditional principles of equity" govern the decision whether to grant or deny injunctive relief in patent infringement cases.  547 U.S. 388, 391, 394 (2006); *see also Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011) (noting "*eBay* abolishes our general rule that an injunction normally will issue when a patent is found to have been valid and infringed").  More importantly, although Plaintiffs' claims raise issues of patent infringement, they do not assert a patent-infringement claim.  Instead, because Plaintiffs bring only state-law claims, the superior court must apply Arizona law, which does not presume irreparable harm, to determine whether to issue injunctive relief.  *See Fann*, 251 Ariz. at 432, ¶ 16 (requiring a showing of the possibility of irreparable harm to grant a preliminary injunction).

¶25        Here, Plaintiffs were required to show the possibility of irreparable harm "not remediable by damages." *Shoen*, 167 Ariz. at 63.  An award of monetary damages generally is an adequate remedy when damages are calculable with reasonable certainty and "address the full harm suffered." *IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 65, ¶¶ 10-11 (App. 2011).  Because the court presumed irreparable harm, it never determined whether Plaintiffs met their burden.  *See id.* at ¶ 10 ("[T]he party seeking an injunction must show a possibility of irreparable injury 'not remediable by damages'" (quoting *Shoen*, 167 Ariz. at 63)).  Accordingly, the superior court abused its discretion in enjoining defendants.

**CONCLUSION**

**¶26** We vacate the superior court's preliminary injunction and remand for further proceedings consistent with this decision.

